No. 1        February 3, 2022        1

# IN THE OREGON TAX COURT
## REGULAR DIVISION

**DEPARTMENT OF REVENUE,**
State of Oregon,
*Plaintiff,*

*v.*

**James WAKEFIELD,**
*Defendant.*

(TC 5404)

On cross-motions for partial summary judgment, the Department of Revenue (the department) and taxpayer differed as to the application of Section 280E of the Internal Revenue Code (Section 280E) to the expenses taxpayer incurred in his marijuana trafficking business in the latter half of tax year 2015. Taxpayer claimed that Measure 91, allowing recreational use of marijuana, disconnected Section 280E for personal income taxpayers for tax year 2015 as codified in ORS 316.680. The court, after examining the text, context, and legislative history of multiple bills during the 2015 and 2016 legislative sessions which amended the codification of Measure 91, concluded that no disconnection applied for tax year 2015 and therefore Section 280E applied to taxpayer. Taxpayer also introduced various constitutional arguments, including the invalidation of Oregon's incorporation of Section 280E under the Sixteenth or Eighth Amendments of the United States Constitution. The court concluded that, when determining the validity of an incorporated provision of federal law, this court determines the provision's validity under federal law, and applying federal authorities. Applying this framework, the court found no violation of the Sixteenth or Eighth Amendments to the United States Constitution. Nor did the court find violations of the Full Text Clause, the Uniformity Clauses, or the Excessive Fines Clause of the Oregon Constitution. The court held that Oregon personal income tax law incorporated Section 280E for tax year 2015, and therefore taxpayer's trafficking expenses were not deductible.

Oral argument on cross-motions for partial summary judgment was held September 7, 2022, in the courtroom of the Oregon Tax Court, Salem.

Darren Weirnick, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Plaintiff Department of Revenue.

Samuel D. Grosz, Attorney at Law, Portland, filed the cross-motion and argued the cause for Defendant.

Decision rendered February 3, 2022.

**ROBERT T. MANICKE, Judge.**

The parties present cross-motions for partial summary judgment on appeal from a decision in the Magistrate Division. That decision concluded that, under the Full Text Provision of the Oregon Constitution (Or Const, Art IV, § 22) the legislature's attempt in 2016 to disallow certain deductions for individuals supplying marijuana legally was invalid as to tax year 2015. The decision therefore held that Defendant was entitled to those deductions under the successful 2014 initiative petition known as Measure 91. For the reasons that follow, this division of the court disagrees and holds that the deductions are disallowed under Oregon statute, and that neither the Full Text Provision nor other specified state or federal constitutional limitations change that result.

## I.   FACTS

Solely for purposes of their motions, the parties do not dispute the following facts: Defendant James Wakefield (Taxpayer) trafficked in marijuana in Oregon during tax year 2015, operating his business in compliance with Oregon law (ORS 475B.010 to 475B.395 or ORS 475B.400 to 475B.525).[1] Taxpayer incurred expenses that would have been deductible under section 162(a) of the Internal Revenue Code, but for the prohibition in Section 280E of the Internal Revenue Code (Section 280E), discussed below.[2] Taxpayer claimed certain such expenses on his Oregon personal income tax return for tax year 2015, and Plaintiff Department of Revenue (the department) disallowed them following an audit. Taxpayer appealed to the Magistrate Division, which granted summary judgment in Taxpayer's favor as to tax year 2015.[3]

---

[1] Unless otherwise indicated, references to the Oregon Revised Statutes (ORS) are to the 2015 edition.

[2] References to the Internal Revenue Code (IRC, or Code) are to the Internal Revenue Code of 1986, as in effect and operative for the tax year beginning on January 1, 2015. Section 162(a) of the Code generally allows as a deduction all "ordinary and necessary" business expenses paid or incurred during the tax year.

[3] The Department's audit and the Magistrate Division appeal involved both tax year 2014 and tax year 2015. In a single decision, the magistrate granted summary judgment in favor of the Department as to tax year 2014 and in favor of Taxpayer as to tax year 2015. This case (TC 5404) constitutes the Department's

## II.   ISSUES

(1)   Under the Full Text Provision, did Oregon personal income tax law incorporate, without modification, the deduction limitations of Section 280E for tax year 2015?

(2)   Does prohibiting regulated marijuana suppliers from taking ordinary and necessary business expense deductions for tax year 2015 violate the Uniformity Clauses or the Excessive Fines Clause of the Oregon Constitution?

(3)   Does the Sixteenth or Eighth Amendment to the United States Constitution invalidate Oregon's incorporation of Section 280E for tax year 2015?

## III.   ANALYSIS

A.   *Under the Full Text Provision, did Oregon personal income tax law incorporate, without modification, the deduction limitations of Section 280E for tax year 2015?*

In 2014, Oregon voters enacted the citizens' initiative known as "Measure 91," allowing and regulating the production and sale of marijuana for recreational use. *See* Or Laws 2015, ch 1. Among many other things, Measure 91 "disconnected" from Section 280E, an existing Code provision that prohibits persons from deducting their expenses incurred in the business of trafficking in federally controlled substances, including marijuana. As enacted, Measure 91's disconnection provision frees personal income taxpayers from Section 280E's prohibition for at least the second half of tax year 2015. The first issue is whether one or more of the legislature's later acts modifying Measure 91's disconnection provision reinstate Oregon's connection to Section 280E for tax year 2015 and thus prohibit Taxpayer's business expense deductions for that year.

1.   *Timeline of relevant statutes; statutory analysis*

In order to address the parties' positions under the Full Text Provision, the court must first determine what the legislature intended to be the law governing Taxpayer's

---

appeal as to tax year 2015. Taxpayer appealed the decision as to tax year 2014, and that appeal (TC 5405) is in abeyance.

deductions for tax year 2015. This requires the court to review the state of the law leading up to Measure 91, Measure 91 itself, and six bills enacted in 2015 and 2016. The court presents this material chronologically. When discussing the 2015 and 2016 bills, the court adds its preliminary analysis and conclusions based on text and context, applying the framework of *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The court then discusses the parties' arguments, including those based on the Full Text Provision.

    a.    Definition of "taxable income"

As a state, Oregon generally has plenary authority to define its own tax base. *Kellas v. Dept. of Corrections*, 341 Or 471, 478, 145 P3d 139 (2006); *see also* Hon. Jack L. Landau, *An Introduction to Oregon Constitutional Interpretation*, 55 Willamette L Rev 261, 284-85 n 151 (2019). Since 1969, however, in the interest of simplicity and convenience, Oregon has used "taxable income" as defined under federal law as the starting point in determining the tax base for the personal income tax. *See* Or Laws 1969, ch 493, § 100; ORS 316.022(6). Federal taxable income is "gross income" as defined in section 61(a) of the Code, reduced by numerous kinds of deductions, including ordinary and necessary business expenses. *See* IRC § 63(a). Accordingly, by incorporating federal "taxable income," Oregon by default allows the same deductions allowed under federal law.[4]

The legislature has always been free to "disconnect" from federal law by defining the Oregon tax base differently. One way the legislature may do so is by defining the Code by reference to a specific publication date that predates a change that the legislature does not wish to adopt. *See Bettles v. Dept. of Rev.*, 7 OTR 153, 160 (1977) ("For the tax year in question, ORS 316.012 had 'frozen' the Internal Revenue Code as of December 31, 1971, as it applied to ORS chapter 316."); *compare, e.g.*, ORS 316.012 (1993) (defining terms by reference to Code as in effect on December 31, 1992) *with* ORS 316.012 (2015) (defining terms related to definition of taxable income by reference to Code as in effect

---

[4] Oregon later also adopted federal taxable income as the starting point in determining the tax base for corporate taxpayers. *See* Or Laws 1983, ch 162 § 7.

"as applicable to the tax year of the taxpayer").[5] Another technique is to expressly reject a particular federal provision, such as a federal deduction or a federal limitation on a deduction. For the personal income tax, the legislature makes express deviations from the Code either by enacting a freestanding statute, or by amending ORS 316.680, a statute that compiles a variety of additions to, and subtractions from, taxable income.[6]

### b. Internal Revenue Code Section 280E

In 1982, Congress enacted Section 280E, which has since remained unchanged. *See* Pub L No. 97-248, Title III, § 351(a). Section 280E provides:

> "No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted."

### c. Oregon's incorporation of Section 280E starting in 1983

In the legislative session following Congress's enactment of Section 280E, the Oregon legislature adopted a wide-ranging law that amended numerous tax provisions and generally "reconnected" Oregon's definition of "taxable income" to an updated federal definition of "taxable income." *See* Or Laws 1983, ch 162, § 59 (amending ORS 316.012). The amendment provided that references to the Internal

---

[5] As discussed below, a 1970 Oregon constitutional amendment, which the court will refer to as the Income Definition Provision, allows the legislature to define taxable income by reference to the Code as in effect either (1) as of a specific date in the past; or (2) "for the tax year of the taxpayer." The latter technique sometimes is referred to as "rolling reconnection," because absent further legislative action it incorporates Congress's changes automatically as they occur. *See* Or Const, Art IV, § 32 (allowing legislature to define income by reference to federal laws "as the same may be or become effective at any time or from time to time.").

[6] By contrast, the corporate income tax chapters have not evolved to include a catch-all statute like ORS 316.680 that compiles multiple Oregon modifications. See ORS 317.259 (declaring that federal taxable income shall be modified "as provided by law"). Instead, a number of discrete modifications applicable to corporations are codified at ORS 317.267 to 317.491.

Revenue Code mean the Code as amended on or before December 31, 1982. *Id*. No other provision in the 1983 edition of the ORS refers to, or purports to disconnect from, Section 280E, and the court concludes that Oregon law first incorporated Section 280E effective for tax years beginning on or after January 1, 1983. *See id*. § 63 (effective date). The court has found no subsequent reference to Section 280E in Oregon personal income tax law until Measure 91 and the 2015 and 2016 acts discussed below.

### d.   Pre-Measure 91 medical marijuana law

Oregon voters enacted a medical marijuana law by initiative in 1998. Or Laws 1999, ch 4 (Oregon Medical Marijuana Act, enacted by initiative petition Measure 67 effective December 3, 1998, codified as *former* ORS 475.300 through 475.346). The legislature expanded the scope of the medical marijuana program in 2005, allowing limited reimbursement to growers for certain costs. *See* Or Laws 2005, ch 822, §§ 8, 9 (SB 1085). In 2013, the legislature expanded the reimbursement provisions to encompass certain additional costs. Or Laws 2013, ch 726, § 9 (2013 HB 3460).[7]

### e.   Measure 91

In the November general election in 2014, the voters adopted Ballot Measure No. 91 (Measure 91), which had been proposed by initiative petition and was entitled the "Control, Regulation, and Taxation of Marijuana and

---

[7] Taxpayer argues at some length that 2013 HB 3460 disconnected from Section 280E by implication well before Measure 91. Taxpayer asserts that 2013 HB 3460 shows that the legislature (1) "wanted (and encouraged) Oregonians to traffic marijuana for medical purposes," an intention that "[c]learly *** cannot be reconciled with the federal policy, underlying IRC § 280E, to punish those who traffic marijuana[, as] a business cannot remain in business if it is subjected to IRC § 280E." Although in hindsight 2013 HB 3460 might be seen as one step Oregon has taken on a longer path diverging from federal restrictions on marijuana, there is no hint in that law that the legislature specifically intended to address Section 280E. ORS chapter 316 sets the bar for deviating from federal definitions higher than the generalized policy clash that Taxpayer describes: A term relating to federal income taxes has the same meaning as in federal law "unless a different meaning is clearly required or the term is specifically defined in this chapter ***." ORS 316.012. "Taxable income" is itself defined in ORS 316.022(6) by express reference to IRC § 63(a) or (b), "with such additions, *subtractions* and adjustments *as are prescribed by this chapter*." (Emphasis added.) 2013 HB 3460 does not refer to taxes, income, or ORS chapter 316, much less to Section 280E. The court rejects Taxpayer's argument.

Industrial Hemp Act." Or Laws 2015, ch 1, § 3. Section 74 of Measure 91 contains the first express reference to Section 280E that the court has found in Oregon personal income tax law. Section 74 amends ORS 316.680 (2013) by adding a paragraph that allows personal income taxpayers a subtraction from federal taxable income as follows:

> "For income tax years commencing on or after January 1, 2015, the amount of any deductions or credits that the taxpayer would have been allowed but for the provisions of section 280E of the Internal Revenue Code."

As discussed below, this text does not expressly limit the subtraction to taxpayers supplying marijuana; it arguably allows the subtraction to anyone "trafficking in" any "controlled substance[]." Measure 91 as a whole became effective December 4, 2014. *See id.* § 84. However, section 74 was to "become operative" on July 1, 2015, and to "apply to" conduct occurring on and after that date. *See id.* §§ 81-82.

A companion provision, section 71 of Measure 91, adds a new, freestanding section to the corporation excise tax chapter, ORS chapter 317, declaring: "Section 280E of the Internal Revenue Code does not apply for purposes of determining taxable income or loss under this chapter." *See* Measure 91, § 2(2) (adding section 71 to ORS chapter 317). Like the personal income tax provision in section 74, section 71 is subject to the "operative" and "applicable" provisions in sections 81 and 82.

> f.    Legislature's response to Measure 91

Over the next two legislative sessions, the legislature devoted substantial resources to enacting laws that conformed to, amended, or otherwise related to Measure 91. *See generally* Legislative Fiscal Office, Budget Information Report, *Status of Oregon Marijuana Programs* (Apr 2016) (LFO Report) *available at* www.oregonlegislature.gov/lfo/Documents/ReportOnMarijuanaPrograms0429_2016.pdf. The first legislative session following the passage of Measure 91 began on February 2, 2015, and ended July 6, 2015. A Joint Committee on Implementing Measure 91 was created and was assigned 22 bills, which it heard over the

course of 30 hearings from February 4 through June 30. *See* https://olis.oregonlegislature.gov/liz/2015R1/Committees/ JM91/Overview. Four of the 2015 bills passed, all in the final days of the session. The next year, in the short session held February 1 to March 3, 2016, a Joint Committee on Marijuana Legalization was assigned five bills, of which four passed. *See* https://olis.oregonlegislature.gov/liz/2016R1/ Committees/JML/AssignedMeasures.

Because the first issue involves parsing multiple amendments to ORS 316.680 and related uncodified timing provisions made in rapid succession over approximately 18 months, the court views the legislature's own published manuals on the drafting of bills as relevant context. *See* Oregon Legislative Assembly, *Form and Style Manual for Legislative Measures* (2015-2016 ed) (*Style Manual*); Oregon Legislative Assembly, *Bill Drafting Manual* (17th ed 2014) (*Drafting Manual*). Both the *Style Manual* and the *Drafting Manual* are public documents prepared by the office of Legislative Counsel under the ultimate authority of the legislature itself. *See* ORS 173.111 to 173.310 (describing authority, function and selection of legislative counsel and legislative counsel committee). The manuals describe recurring problems confronting bill drafters and set forth conventions intended to minimize ambiguity. *See Drafting Manual* at Introduction.

g.  2015 HB 3400 (repealing July 1, 2015, "operative" date of Measure 91's disconnection)

On June 30, 2015, the Governor signed House Bill 3400, effecting the "passage"[8] of that bill, which amends many provisions of Measure 91. Or Laws 2015, ch 614 (2015 HB 3400). Section 175 of 2015 HB 3400 repeals sections 81 and 82 of Measure 91, eliminating the provisions that made the new subtraction under ORS 316.680 operative and

---

[8]  Generally, if the Governor signs a bill, it becomes law on January 1 of the year after passage of the act. ORS 171.022; Or Const, Art V, § 15b(1). The legislature may prescribe an earlier effective date; however, "[n]o act shall take effect, until 90 days from the end of the session at which the same shall have been passed, except in case of emergency; which emergency shall be declared in the preamble, or the body of the law." Or Const, Art IV, § 28. Such emergency legislation becomes effective once approved by the Governor. *State ex rel. Thomas v. Hoss*, 143 Or 41, 21 P2d 234 (1933).

applicable to conduct occurring on or after July 1, 2015. *See* 2015 HB 3400, § 175(1) ("Sections 26, 42, 55, 71, 81, 82, 83, 84, 85 and 86, chapter 1, Oregon Laws 2015, are repealed."). The same section also repeals section 71 of Measure 91, the disconnection from Section 280E applicable to corporate taxpayers. However, nothing in HB 3400 purports to eliminate or change section 74 of Measure 91, the disconnection from Section 280E applicable to personal income taxpayers.

Section 182 of 2015 HB 3400 declares an emergency, apparently intending to make 2015 HB 3400, including the repeal provisions, effective upon the Governor's signature on June 30, 2015. The court has found nothing in any of the bills discussed below that purports to repeal or otherwise affect section 175 of 2015 HB 3400, nor do the legislature's cumulative session publications that list amendments of uncodified laws identify any bills affecting section 175. *See* Sections in Uncodified Law Amended, Repealed or "Added to" (2015) *available at* https://www.oregonlegislature.gov/ AutoPubs/artables2015R1.pdf at pages RS15-T-64 to -65; (2015 A&R Table); Sections in Uncodified Law Amended, Repealed or "Added to" (2016) *available at* https://www. oregonlegislature.gov/AutoPubs/artables2016R1.pdf, at pages RS16-T-10 to 11.

The court tentatively concludes that 2015 HB 3400, viewed apart from any other bills, causes the disconnection from Section 280E enacted in Measure 91 to be effective on the constitutional effective date of Measure 91, which was December 4, 2014, 30 days after the passage of Measure 91. *See* Or Const, Art IV, § 1(4)(d) ("Notwithstanding section 1, Article XVII of this Constitution, an initiative or referendum measure becomes effective 30 days after the day on which it is enacted or approved by a majority of the votes cast thereon. A referendum ordered by petition on a part of an Act does not delay the remainder of the Act from becoming effective.") However, the disconnection for personal income taxpayers did not *apply* to any part of any tax year before 2015 because section 74's applicability clause caused the disconnection to start "[f]or income tax years commencing on or after January 1, 2015." Measure 91, § 74.

h. 2015 HB 2041 (replacing substantive text of Measure 91's disconnection with narrower version applicable to 2016)

Several weeks later, on July 20, 2015, the Governor signed House Bill 2041. Or Laws 2015, ch 699 (2015 HB 2041). In sections 20 and 21, 2015 HB 2041 substitutes new text that states a substantially narrower scope of disconnection from Section 280E when compared to section 74 of Measure 91. First, section 20 of 2015 HB 2041 amends the text of ORS 316.680 as it appeared before any amendment by Measure 91, inserting a new paragraph that allows a subtraction for:

> "[a]ny federal deduction that the taxpayer would have been allowed for the production, processing or sale of marijuana items authorized under sections 3 to 70, chapter 1, Oregon Laws 2015, but for section 280E of the Internal Revenue Code."

2015 HB 2041, § 20. Sections 3 to 70 of Measure 91 authorize production, processing, and sale of marijuana for recreational use; those provisions later were codified at ORS 475B.010 to 475B.395. As discussed below, the new paragraph inserted by section 20 does not refer to suppliers[9] of medical marijuana, whose activities were authorized under ORS 475.300 to 475.346 (later recodified as ORS 475B.400 to 475B.525).

Section 21 of 2015 HB 2041 amends the text of ORS 316.680 "as amended by section 74" of Measure 91. Section 21 displays ORS 316.680, showing in brackets and italic type the text that had been added by section 74 of Measure 91, and inserting in boldfaced type exactly the same text inserted by section 20, reprinted above.

For corporate taxpayers, section 19 of 2015 HB 2041 adds to ORS chapter 317 a new provision adopting a similarly narrow disconnection from Section 280E, stating: "Section 280E of the Internal Revenue Code applies to all trafficking

---

[9] Measure 91 describes different categories of persons licensed under the act including "marijuana retailer", "marijuana wholesaler", "marijuana processor" and "marijuana producer." *See* Or Laws 2015, ch 1, § 5. The court refers to these and similar occupations involving recreational or medical marijuana collectively as "suppliers."

in controlled substances in Schedule I or Schedule II that is prohibited by federal law or the laws of this state, other than conduct authorized under sections 3 to 70, chapter 1, Oregon Laws 2015." 2015 HB 2041, § 19; *id.* § 18 (adding section 19 to ORS chapter 317).

Regarding timing, section 23 of 2015 HB 2041 provides that the amendments by sections 19, 20 and 21 "apply to" conduct occurring on or after January 1, 2016, while section 27 provides a general effective date for 2015 HB 2041 that is the 91st day after adjournment *sine die*. Section 21 of 2015 HB 2041 replaces the entire amendment to ORS 316.680 that had been enacted by section 74 of Measure 91, including the opening clause, which reads: "For income tax years commencing on or after January 1, 2015 ***." 2015 HB 2041 does not purport to amend the freestanding "applicable" or "operative" provisions of sections 81 and 82 of Measure 91; those had been repealed by HB 3400. Nor does 2015 HB 2041 refer at all to conduct occurring at any time before 2016.

> i. 2015 SB 777 (unrelated amendment of ORS 316.680 for "ABLE accounts")

The 2015 legislature also passed SB 777, which facilitates tax-favored "savings accounts for disability-related expenditures" known as "ABLE accounts." *See* Or Laws 2015, ch 843, § 1 (2015 SB 777). This act, passed on August 12, 2015, is substantively unrelated to Measure 91 and the later marijuana legislature discussed here; the court refers to it only because, like Measure 91 and 2015 HB 2041, it effects its purpose by amending ORS 316.680. Sections 3 and 4 of 2015 SB 777 do so by inserting a new subtraction for certain distributions from an ABLE account, up to the amount of qualified disability expenses of the beneficiary of the account. Section 3 amends ORS 316.680 as it appeared before any amendment by Measure 91, while section 4 amends ORS 316.680 as amended by Measure 91. Under section 28 of 2015 SB 777, sections 3 and 4 apply to distributions from and contributions to ABLE accounts for tax years beginning on or after January 1, 2016. 2015 SB 777 as a whole became effective on the 91st day after the session adjourned, *i.e.*, on October 5, 2015. *Id.* § 30.

       j.   Text analysis (2015 legislation)

As a first step, the court considers the four provisions of Measure 91 that are relevant to this case, and their treatment by 2015 legislation, based solely on the text of each provision and amendment:

(1)   Substantive amendment of ORS 316.680. Section 74 of Measure 91 amended ORS 316.680 to disconnect from Section 280E for all personal income taxpayers, whether trafficking in marijuana or in other controlled substances. Section 21 of 2015 HB 2041 amended the text of ORS 316.680 "as amended by section 74" of Measure 91 by deleting the text added by Measure 91 and replacing it with a narrower disconnection provision applicable only to suppliers of recreational marijuana. No other 2015 act purports to change this amendment.

(2)   Timing of amendment of ORS 316.680. Measure 91 included four provisions related to the timing of the substantive amendment of ORS 316.680

    a.   Section 74 included a clause indicating that the substantive change to ORS 316.680 applies "[f]or income tax years commencing on or after January 1, 2015." Section 21 of HB 2041 replaced section 74 in its entirety with text that omitted that phrase, any version of it, or any other timing language.

    b.   Section 81 of Measure 91 stated that section 74 "appl[ied] to *** conduct occurring on and after" the July 1, 2015, operative date in section 82(1). The legislature repealed section 81 in section 175 of 2015 HB 3400. That repeal became effective when 2015 HB 3400 became effective. Section 23 of 2015 HB 2041 provides that the narrower amendment to ORS 316.680 made by section 21 of 2015 HB 2041 "appl[ies] to conduct occurring on or after January 1, 2016, and to tax years beginning on or after January 1, 2016."

    c.   Section 82(1) stated that section 74 "bec[ame] operative on July 1, 2015." The legislature repealed section 82 in section 175 of 2015 HB 3400.

d.   Section 84 stated that Measure 91 as a whole became "effective" 30 days after approval by a majority of votes cast. The legislature repealed section 84 in section 175 of 2015 HB 3400.[10]

(3)   *Tentative conclusion.* The text indicates that, taken together, 2015 HB 2041 and 2015 HB 3400 repealed and replaced the disconnection provision in section 74 of Measure 91 for all time. Those two 2015 laws rendered section 74 ineffective, inapplicable and inoperative for tax years 2015 and all subsequent tax years. In its place, the narrower disconnection from Section 280E solely for recreational marijuana suppliers, created in 2015 HB 2041 section 21, became applicable to conduct occurring on or after January 1, 2016, and to tax years beginning on or after January 1, 2016.

k.   Context analysis (2015 legislation)

*Parallel treatment of corporate taxpayers.* The court starts its examination of context by reviewing how Measure 91 and the 2015 acts addressed corporate taxpayers. The context of the various provisions amending ORS 316.680 for personal income taxpayers includes other provisions of the same laws, particularly those related to the same general subject matter. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Both Measure 91 and the subsequent legislation changed not only the treatment of individuals, trusts, and other persons subject to the personal income tax, but also the treatment of corporations subject to Oregon's corporation excise tax or corporation income tax, which likewise are imposed on federal "taxable income" as modified under Oregon law. *See* ORS 317.070 (imposing corporation excise tax on corporations doing business in Oregon); ORS 317.010(8), (10) (defining "Oregon taxable income" by reference to federal taxable income); ORS 318.020 (imposing corporation income tax on corporations not doing business in the state but deriving income from sources within the state). Section 71 of Measure 91 added a freestanding provision to ORS chapter 317 stating: "Section

---

[10] Notwithstanding section 84 of Measure 91 or that section's repeal by section 175 of 2015 HB 3400, Measure 91 became effective 30 days after its passage pursuant to Article IV, section 1(4)(d) of the Oregon Constitution.

280E of the Internal Revenue Code does not apply for purposes of determining taxable income or loss under this chapter." *See id.* §§ 2(2), 71. The same applicable, operative and effective date provisions applied to section 71 as to section 74. *See id*. §§ 81, 82, 84. The court concludes that section 71 expressed the same intention for corporate taxpayers that section 74 expressed for personal income taxpayers: to disconnect from Section 280E for any trafficker in controlled substances.

The same 2015 acts discussed above modified Measure 91's disconnection for corporations. Section 175 of 2015 HB 3400 repealed section 71 of Measure 91, eliminating the freestanding provision that declared that Section 280E "does not apply" to corporate taxpayers. And by repealing sections 81, 82 and 84 of Measure 91, 2015 HB 3400 also eliminated all the provisions that made section 71 applicable, operative and effective. *See* 2015 HB 3400, § 175. In 2015 HB 2041, section 19, the legislature adopted a new freestanding disconnection provision that applied only to recreational marijuana suppliers. Section 18 made that new provision a part of ORS chapter 317 and thus applicable to corporate taxpayers. Section 23 provides that the new disconnection provision for corporations, like the provision for personal income taxpayers, applies to conduct occurring on or after January 1, 2016, and to tax years beginning on or after January 1, 2016.

The plain text of the corporation excise tax provisions in 2015 HB 3400 and 2015 HB 2041 is consistent with the court's tentative conclusion above regarding personal income taxpayers. By outright "repeal[ing]" section 71 of Measure 91, 2015 HB 3400 eliminated the original disconnection provision in Measure 91, paving the way to replace it in 2015 HB 2041 with a narrower text that would become applicable only after 2015. Because 2015 HB 3400 expressly repealed section 71 of Measure 91, there is no way to reasonably infer any intention to retain a disconnection from Section 280E for corporate taxpayers for periods before 2016. The court is not aware of any reason why the 2015 legislature would have wanted to make the allowance or denial of business expense deductions depend on whether the taxpayer was taxed as a corporation, versus as an individual

operating as a sole proprietorship or through a partnership or other pass-through entity. Therefore, the court views the somewhat clearer treatment of corporate taxpayers as evidence of the legislature's intention for personal income taxpayers.

Significance of lack of express "repeal" of section 74 of Measure 91. The court next considers whether the absence of an express "repeal" of section 74 of Measure 91 implies that the legislature intended to retain Measure 91's disconnection for personal income taxpayers for periods before 2016. Here, the court finds the *Drafting Manual* useful as context. Rather than use the word "repeal," in section 21 of 2015 HB 2041, the legislature reprinted ORS 316.680 using brackets and italic type to indicate deletion of the text added by Measure 91, section 74, and using boldfaced type to indicate the addition of the new, narrower disconnection language. *See Style Manual* at 1 (prescribing type styles to indicate changes). The *Drafting Manual* suggests that the legislature was following a convention, taking care to not "repeal" a section of an act that amends an existing ORS section, so as to avoid any misunderstanding as to whether the legislature intended to repeal the entire ORS section. *See Drafting Manual* at 12.7 (implying that drafter, when re-amending an ORS provision to remove a prior amendment, should restate the pre-amendment text of the ORS provision rather than state that the prior amendment is repealed). By contrast, section 71 of Measure 91, relating to corporate taxpayers, was a freestanding addition to ORS chapter 317; therefore, expressly declaring section 71 to be "repealed" could not be misunderstood as also repealing earlier, codified text. The court concludes that the legislature eliminated the disconnection text that section 74 of Measure 91 had added; the fact that the legislature never used the word "repeal" is of no consequence.

Absence of cross-reference to 2015 HB 2041 in 2015 SB 777. Finally, the court considers 2015 SB 777 as additional context because sections 3 and 4 of that bill amend ORS 316.680. Section 3 amends a version of ORS 316.680 that reflects no changes by Measure 91 or by 2015 HB 2041. Section 4 amends a version that reflects only the changes by Measure 91 and none by 2015 HB 2041. The question is

whether the absence in 2015 SB 777 of any acknowledgment of the amendment of ORS 316.680 by 2015 HB 2041 indicates that the legislature intended to undo or abrogate that amendment. The *Drafting Manual* offers an insight into the practical situation and conventions for addressing it:

> "A bill already introduced at the same session may amend the ORS section that is to be amended in the draft. If that bill has passed, then in a later bill the text *should* set forth at length the latest version of the ORS section, which means the ORS section as amended by the earlier bill. However, *if time does not permit that step*, the drafter should verify that the subsequent amendment does not *conflict in purpose* with the earlier amendment. If it does, the earlier amendment needs to be repealed. If the other bill has not yet been passed, and there is any conflict, it may have to be dealt with in a *conflict amendment* as described later in this chapter."

*Drafting Manual* at ch 13.8-9 (emphases added); *see also Style Manual*, App A at 97. This passage indicates that the legislature was aware that, at the time of a vote on a bill, the amendments to an ORS section proposed in that bill may not reflect other amendments that might have passed as recently as days, or even moments, before. So long as there is no "conflict in purpose" between the two sets of amendments, the legislature's practice is simply to vote on each bill as it stands, without regard to the lack of current cross-references. The court has found nothing in the cumulative publications from the 2015 session indicating that a conflict amendment was undertaken. *See* 2015 A&R Table. Nor does the court see any basis to conclude that the respective amendments to ORS 316.680 conflicted with each other. As indicated by the "relating" clauses of each bill, 2015 HB 2041 related to "marijuana," while 2015 SB 777 related to "savings accounts for disability-related expenses."[11] *See generally Style Manual* at 21-22 (discussing conventions for complying with Single-Subject Clause). Nothing in either bill suggests that the legislature intended to use 2015 SB 777 as a vehicle

---

[11] "Relating" clauses are closely scrutinized for compliance with the single-subject requirement in Article IV, section 20, of the Oregon Constitution. *See generally State v. Fugate*, 332 Or 195, 26 P3d 802 (2001).

to strip out the amendments that it had put in place in the same session in 2015 HB 2041.

Conclusion as to 2015 legislation. The context supplied by section 71 of Measure 91 and that section's treatment by 2015 HB 3400 and 2015 HB 2401, together with the *Drafting Manual* and the *Style Manual*, reinforce the court's tentative conclusion that the legislature intended to leave personal income taxpayers connected to Section 280E for periods before 2016. The additional context of 2015 SB 777 does not change that conclusion.

l.   *2016 HB 4014 (expanding disconnection to cover medical marijuana suppliers)*

In the short 2016 session, the legislature again amended ORS 316.680 as related to marijuana suppliers, starting with House Bill 4014, passed on March 3, 2016. Or Laws 2016, ch 24, §§ 28, 28a, 29 (2016 HB 4014). These provisions inserted the same amendment to ORS 316.680 for personal income taxpayers that was inserted by sections 20 and 21 of 2015 HB 2041, with one change: whereas the text inserted by 2015 HB 2041 applies the disconnection for personal income taxpayers authorized as *recreational* marijuana suppliers, the text inserted by 2016 HB 4014 expands the scope of the disconnection to also cover *medical* marijuana suppliers. *Compare* 2015 HB 2041, §§ 20, 21 (referring to marijuana businesses "authorized under sections 3 to 70" of Measure 91—later codified as ORS 475B.010 to 475B.395) *with* 2016 HB 4014, § 28a (referring to marijuana businesses "authorized under ORS 475B.010 to 475B.395 *or 475B.400 to 475B.525*") (emphasis added).

The legislature's technique for effecting these changes followed the "double amendment" procedure outlined in the Manual. *Style Manual* at 54. Without referring expressly to 2015 HB 2041, section 28 of 2016 HB 4014 purports to amend a version of ORS 316.680 that includes the text inserted by 2015 HB 2041, as well as the text relating to ABLE accounts inserted by 2015 SB 777 (and not the text as originally adopted in section 74 of Measure 91). Section 28 marks for deletion (in italics and brackets) the text that was inserted by 2015 HB 2041 and does not replace it, leaving

ORS 316.680 as it stood before Measure 91 but with the addition of the ABLE account provision. Section 28a of 2016 HB 4014 re-inserts the identical text deleted by section 28, except that it adds a cross-reference to ORS 475B.400 to 475B.525, governing medical marijuana providers.

Nothing in 2016 HB 4014 purports to add, repeal or amend any provisions related to connection to Section 280E for corporate taxpayers.

The stated effective date of 2016 HB 4014 as a whole is March 3, 2016, pursuant to an emergency clause that makes the bill effective upon passage. *See* 2016 HB 4014, § 82. The expanded disconnection in section 28a of 2016 HB 4014 applies to "conduct occurring on or after January 1, 2016, and to tax years beginning on or after January 1, 2016." 2016 HB 4014, § 29(2). However, the amended text in section 28 of 2016 HB 4014 applies to "conduct occurring on or after July 1, 2015, and before January 1, 2016, and to tax years ending before January 1, 2016." *Id.*, § 29(1).

> m.   2016 SB 1598 (repealing all relevant portions of 2016 HB 4014)

On the same day 2016 HB 4014 passed, a separate bill passed that repealed all of 2016 HB 4014's provisions relevant to this case. *See* Or Laws 2016, ch 23, § 30 (2016 SB 1598) ("If House Bill 4014 becomes law, sections * * * 28 (amending ORS 316.680), 28a (amending ORS 316.680), [and] 29 * * * [of] Enrolled House Bill 4014 * * * are repealed."). 2016 SB 1598 does not otherwise amend ORS 316.680. 2016 SB 1598 includes an emergency clause that makes it effective upon passage, March 3, 2016. *Id.*, § 34.

> n.   2016 SB 1601 (reinstating disconnection for medical marijuana suppliers using same language as 2016 HB 4014)

The only remaining bill purporting to affect any connection to Section 280E for marijuana suppliers passed on March 29, 2016, and contains provisions identical to those of 2016 HB 4014, *i.e.*, the same expansion of the scope of the disconnection to cover medical marijuana suppliers. *See* Or Laws 2016, ch 91 (2016 SB 1601). Section 8, like section 28

of 2016 HB 4014, purports to amend a version of ORS 316.680 that includes both the text inserted by 2015 HB 2041 and the ABLE account text inserted by 2015 SB 777. The amendment deletes the text inserted by 2015 HB 2041, leaving ORS 316.680 as it stood before Measure 91, with the addition of the ABLE account provision. Section 9 of 2016 SB 1601, states that it amends section 8 by re-inserting the identical text deleted by section 8, except that it adds a cross-reference to ORS 475B.400 to 475B.525, governing medical marijuana suppliers. The text of sections 8 and 9 is, therefore, materially identical to sections 28 and 28a of 2016 HB 4041.

Section 10 of 2016 SB 1601 amends ORS 317.363, which is the codification assigned to section 19 of 2015 HB 2041, the freestanding provision that disconnected from Section 280E for corporation excise taxpayers. The amendment expands the scope of the disconnection to apply to medical marijuana suppliers pursuant to ORS 475B.400 to 475B.525.

Section 11 contains "applicable" date provisions that are materially identical to those in section 29 of 2016 HB 4041: subsection (2) of section 11 declares that section 9 (expanding the disconnection to include medical marijuana suppliers), applies to "conduct occurring on or after January 1, 2016, and to tax years beginning on or after January 1, 2016." Subsection (1) of section 11 declares that the amendments to ORS 316.680 by section 8 apply to "conduct occurring on or after July 1, 2015, and before January 1, 2016, and to tax years ending before January 1, 2016."

In contrast to 2016 HB 4014, 2016 SB 1601 contains no emergency clause. Section 13 provides that 2016 SB 1601 takes effect on the 91st day after adjournment.

    o.   Text and context analysis (2016 legislation)

The court finds a preliminary text- and context-based analysis of the 2016 legislation straightforward.[12]

---

[12] The court also notes various items of 2016 legislative history to which the parties referred in briefing, but which the court sees no need to discuss. *See* Staff Measure Summary, HB 4014A (2016); Statement of Rep. Ann Lininger, Joint Committee on Marijuana Legalization, Meeting on SB 1601 (Feb 23, 2016), at

First, the court ignores 2016 HB 4014 based on the complete repeal of all relevant provisions by 2016 SB 1598. This leaves 2016 SB 1601 as the only relevant 2016 law. As to the substantive treatment of personal income taxpayers, the key text is section 9 of 2016 SB 1601, which expands the scope of the disconnection from Section 280E to include medical marijuana suppliers. As to timing, section 11(2) provides that the expanded version of the disconnection in section 9 applies to conduct and tax years on or after January 1, 2016. For tax years ending before January 1, 2016, the text of section 8, read together with section 11(1), contains nothing that would allow any disconnection from Section 280E for any personal income taxpayer who is a supplier of any controlled substance, including marijuana.

As with the 2015 legislation, the treatment of corporate taxpayers is relevant context that supports the foregoing understanding of the treatment of personal income taxpayers. The only 2016 provision relating to corporate taxpayers is section 10 of 2016 SB 1601, which expands the scope of the disconnection from Section 280E to the same extent as for personal income taxpayers and is subject to the same applicability date: conduct and tax years on or after January 1, 2016. *See* 2016 SB 1601, § 11(2).

The reference in section 11(1) to conduct occurring in the latter half of 2015 does raise two questions: First, if the court's earlier conclusion is correct, that section 175 of 2015 HB 3400 repealed the July 1, 2015, operability and applicability provisions in sections 81 and 82 of Measure 91, why would the 2016 legislature refer to conduct occurring in the latter half of 2015? For that matter, why does section 8 of 2016 SB 1601, which section 11(1) makes applicable only to pre-2016 tax periods, purport to delete a disconnection provision that, under section 175 of 2015 HB 3400 and section 23 of 2015 HB 2041, never applied to pre-2016 tax years? Ultimately, the court sees little value in pursuing these questions because section 11(1) of 2016 SB 1601 itself renders the question moot, at least for Taxpayer and other individual personal income taxpayers. Section 11(1) causes

0:35 to 0:40 and 1:25 to 1:30; Testimony of Mark Mayer, Work Session, Joint Committee on Marijuana Legalization, HB 4014 (Feb. 9, 2016) at 11:35 to 13:00.

the amendments in ORS 316.680 that eliminate any disconnection to apply not only to *conduct* on or after July 1, 2015, and before January 1, 2016, but also to *tax years* ending before January 1, 2016. In this case, Taxpayer, like all or nearly all individuals, is on a calendar tax year, so that any conduct in the latter half of 2015 would necessarily also fall within the tax year ending December 31, 2015. Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates & Gifts*, ¶ 105.2 (Nov 2021). Even if the reference in section 11(1) to conduct on or after July 1, 2015, is read as a reference to Measure 91, it is no more than an oblique allusion that cannot revive any part of Measure 91 and does not change the court's text-and-context analysis.

    2.   *Taxpayer's arguments*

        a.   Arguments based on statutory text and later-in-time rule under Or Const, Art IV, § 22

Taxpayer's position regarding the text of the statutes is: both in 2015 and in 2016, the legislature let stand Measure 91's treatment of taxpayers for conduct and tax years ending before 2016. Taxpayer acknowledges that 2015 HB 2041 "repealed what Measure 91 granted taxpayers—a decoupling from IRC § 280E * * *." However, Taxpayer relies on the fact that section 3 of 2015 SB 777 purported to amend a version of ORS 316.680 that did not show any amendments by 2015 HB 2041. Taxpayer reads the reprinting in 2015 SB 777 of ORS 316.680 as amended by Measure 91 to mean that 2015 SB 777 reinstated that text and undid the amendments by 2015 HB 2041 for tax years ending before 2016. Invoking the later-in-time rule in the second clause of Article IV, section 22 of the Oregon Constitution, Taxpayer then points to the fact that the Governor signed 2015 SB 777 after she signed 2015 HB 2041; therefore, according to Taxpayer, "Senate Bill 777 controls."[13] From there, Taxpayer

---

[13] As amended in 1976, the second and third sentences of Article IV, section 22, of the Oregon Constitution provide:

"However, if, at any session of the Legislative Assembly, there are enacted two or more acts amending the same section, each of the acts shall be given effect to the extent that the amendments do not conflict in purpose. If the amendments conflict in purpose, the act last signed by the Governor shall control."

asserts that 2016 SB 1601 did not change the result because "it merely made 'technical fixes' * * *."

As discussed above, the court disagrees with Taxpayer's premise as to the effect of 2015 SB 777 on 2015 HB 2041. Taxpayer fails to identify how the two bills "conflict in purpose," as would be required under Article IV, section 22. All indicators are that the legislature simply amended ORS 316.680 twice in the same session in two bills that related to wholly different subjects—ABLE accounts vs. marijuana. The need to draft more than one bill amending the same existing statute, before it is known whether any of the bills will pass, arises often enough that the legislature has adopted and published conventions to address the possibility, which the legislature followed with respect to these two bills. It would be unreasonable for the court to infer that any legislator voting on 2015 SB 777 thought he or she was thereby eliminating the amendments in 2015 HB 2041. The court concludes that 2015 SB 777 had no effect on 2015 HB 2041.

b. Argument based on Full Text Provision of Or Const, Art IV, § 22

Taxpayer adopts the magistrate's conclusion that the legislature failed to comply with the Full Text Provision in enacting section 11(1) of 2016 SB 1601, and that that failure renders the amendments void for Taxpayer's tax year, causing section 74 of Measure 91 to apply instead. The Full Text Provision is unchanged since its adoption in 1859 and provides:

> "No act shall ever be revised, or amended by mere reference to its title, but the act revised, or section amended shall be set forth, and published at full length."

Or Const, Art IV, § 22. The magistrate perceived the following problem:

> "The 2016 amendments to ORS 316.680 do not recite the language of the original statute in effect for 2015. The only constitutional construction is to find that the 2016 changes only applied to the version of ORS 316.680 that was stated in full in [2016 SB 1601], notwithstanding the earlier effective date. In this case, the language from the 2015 law

> was amended in HB 2041 but that change was effective January 1, 2016. The later revision to the 2015 law, with the earlier effective date, by contrast, did not state, in full, the text of the 2015 law and therefore cannot properly be considered an amendment to that law."

*Wakefield v. Dept. of Rev.*, TC-MD 190121R, WL 905739 at *4 (Feb 25, 2020) (footnote omitted).[14] The court agrees with the Department that this view errs, first by overlooking how sections 8 and 23 of 2015 HB 2041 changed the law in effect for tax years ending before January 1, 2016, and second by misreading the requirement to set forth the "act revised, or section amended" under the case law interpreting the Full Text Provision.

As the court has explained in its discussion of text and context, by the start of the 2016 legislative session, 2015 HB 2041 (along with 2015 HB 3400) had replaced Measure 91's amendment to ORS 316.680 with new text that disconnected only for recreational marijuana suppliers, effective only for conduct occurring, and tax years beginning, on or after January 1, 2016. Thus, even if the court were to conclude that the legislature failed to comply with the Full Text Provision in enacting 2016 HB 1601, the result could not have been to reinstate Measure 91's broader amendment to ORS 316.680 for any prior period.

However, 2016 SB 1601 did not violate the Full Text Provision. As the Department points out, the Oregon Supreme Court concluded early on that the Full Text Provision does not require the legislature to reprint the *pre-amendment* version of a law or ORS section, but only the version as it will read *after* the amendment proposed in the bill. *Flanders v. Multnomah County*, 43 Or 583, 585-86, 73 P 1042 (1903) (holding that Full Text provision did not require text of original statute where new provisions superseded the old); *Murphy v. Salem*, 49 Or 54, 59, 87 P 532 (1906) (minor errors in an amendatory act do not violate the Full Text provision provided legislators could not be misled or deceived by the effect of the law); *Kerr v. Bradbury*, 193 Or App 304,

---

[14] The Department states, and the court agrees, that the "original statute in effect for 2015" in the quoted passage refers to Measure 91, section 74, as do the magistrate's later references to "the 2015 law."

325, 89 P3d 1227 (2004) (holding that, like Article IV, section 22, of the Oregon Constitution, Article I, section 1(2)(d), "requires publication of the full text of the statute as it would appear if the initiative petition were to be enacted" not just the sections being amended). To be sure, the *Style Manual* indicates that the legislature has directed its staff to reprint the pre-amendment version, and also to show the text proposed for deletion in brackets and italics, while the proposed new text is to be shown In boldface type. *Style Manual* at 28. But these conventions are merely a relatively recent[15] and very welcome convenience for the reader; they go beyond the effort mandated by the Full Text Provision. And if, when the dust settles on multiple amendments to the same provision of existing law, an enacted bill purports to show text as marked for deletion that had already been eliminated by another recent law (as may have occurred with sections 11(1) and 8 of 2016 HB 1601), there is no violation of the Full Text Provision because anyone reading the bill will see the full text of the enacted law that citizens are required to follow.

c.   Other arguments

The court briefly addresses two points mentioned in Taxpayer's briefing. First, Taxpayer seems to assert that inclusion of an emergency clause in a bill that regulates taxation renders the "tax provisions" of the bill "invalid."[16] Yet elsewhere in the same discussion, Taxpayer seems to agree with *Advance Resorts of America, Inc. v. City of Wheeler*, where the Court of Appeals, upon review of Oregon authorities, concluded that the unconstitutional inclusion of an emergency clause renders invalid only the emergency clause itself, with the result that the court will sever that clause from the rest of the law. 141 Or App 166, 178-79, 917 P2d 61 (1996) ("It is well settled that an enactment is not rendered unconstitutional as a whole merely because it contains an

---

[15] In the pre-1953 chaptered laws, marked deletions and boldface additions are maddeningly absent. *See, e.g.*, Or Laws 1939, ch 152 (amending section 56-2008 of Oregon Code without showing changes but setting forth the text as amended in full).

[16] Taxpayer makes this point in his discussion of the tax provisions of 2016 HB 4014, which were entirely repealed. However, if valid the point would apply equally with respect to 2015 HB 3400 and 2016 SB 1598, as those bills also included emergency clauses.

emergency clause."). Taxpayer does not assert that a delayed effective date would affect his arguments about 2015 HB 4014 or any other 2015 or 2016 law. Assuming, without deciding, that 2015 HB 4014, 2015 HB 3400 and 2016 SB 1598 were laws "regulating taxation," the court rejects Taxpayer's argument that the inclusion of an emergency clause rendered any tax provisions in those laws invalid.

Second, in making his emergency clause argument, Taxpayer refers to the test that has developed for determining whether a bill is "for raising revenue" under Article IV, sections 18 and 25(2) (respectively, the Origination and Supermajority Clauses).[17] To the extent that Taxpayer's invocation of *Bobo v. Kulongoski*, 338 Or 111, 107 P3d 18 (2005) is an argument that any of the income tax provisions in the 2015 or 2016 bills violated the Origination Clause or the Supermajority Clause, the court disagrees. At most, each of those provisions merely modified the existing tax base of "taxable income"; none imposed a new tax or increased an existing tax rate. Therefore, the provisions lacked the "essential features of a bill levying a tax." *Id.* at 122; *see Boquist v. Dept. of Rev.*, 23 OTR ___ (2019), 2019 WL 1314840 at *19 (concluding that legislation disconnecting Oregon tax law from newly adopted federal tax deduction "lacks the essential features of a bill levying a tax because it changes the base of the personal income tax").

   3.  *Conclusion*

Accordingly, barring any constitutional infirmity discussed below, under 2015 HB 3400 and 2015 HB 2041, the court concludes that Section 280E applied to personal income taxpayers for tax year 2015. For that year, the legislature undid every relevant component of Measure 91: 2015 HB 3400 repealed all of the relevant effective, applicable, and operative dates in Measure 91, and 2015 HB 2041 replaced the substantive text of Measure 91's disconnection with a narrower disconnection provision that applied starting only in 2016. As a result, no disconnection applied for tax year 2015, and Oregon simply incorporated Section

---

[17] Taxpayer has not argued, and the court does not decide, that an act "regulating taxation," as to which Article IX, section 1a of the Oregon Constitution prohibits an emergency clause, is necessarily also a "bill for raising revenue."

280E by default, as one of the many provisions of the Code that "relat[es] to the measurement of taxable income ***." ORS 316.007(1).

Nothing that the 2016 legislature did changed this result for tax year 2015. The 2016 legislature somewhat expanded the scope of the new disconnection provision to include medical marijuana suppliers in section 9 of 2016 SB 1601, with the end result that taxpayers can subtract from federal taxable income:

> "[a]ny federal deduction that the taxpayer would have been allowed for the production, processing or sale of marijuana items authorized under ORS 475B.010 to 475B.395 or 475B.400 to 475B.525 but for section 280E of the Internal Revenue Code."

However, that change, too, applied only starting in 2016. It did not reinstate any disconnection for tax year 2015.

B.   *Does prohibiting regulated marijuana suppliers from taking ordinary and necessary business expense deductions for tax year 2015 violate the Uniformity Clauses or the Excessive Fines Clause of the Oregon Constitution?*

   1.   *Uniformity Clauses*

Taxpayer argues that Section 280E, as incorporated by Oregon law, violates the Uniformity Clauses of the Oregon Constitution. *See* Or Const, Art I, § 32 ("[A]ll taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."); Art IX, § 1 ("The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State."). Read together,[18] the Uniformity Clauses permit the legislature to classify subjects for the purpose of taxation and to subject those classes to different treatment as long as (1) members of the same class are treated in a uniform manner within the taxing jurisdiction; and (2) there is a rational (*i.e.*, not arbitrary or capricious) basis for the creation of the class. *See Huckaba v. Johnson*, 281 Or 23, 26,

---

[18] *See Jarvill v. City of Eugene*, 289 Or 157, 171 n 15, 613 P2d 1 (1980) ("We have held that these two constitutional provisions requiring tax uniformity are to be read together.").

573 P2d 305 (1978) (classifications for purposes of taxation are constitutionally permissible if the grounds of classification "rest[ ] upon a rational basis."); *Dutton Lbr. Corp. v. Tax Com.*, 228 Or 525, 539-40, 365 P2d 867 (1961) (explaining that, under Art I, § 32, "the legislature is granted specific authority to classify subjects for tax purposes, provided the classification is reasonable and the tax is applied uniformly within the class" and classifications are permissible if "reasonably related to the object of the legislation"). "A classification is rationally based 'if it rests upon genuine differences' and those differences bear a 'reasonable relationship to the legislative purpose.'" *Knapp v. City of Jacksonville*, 342 Or 268, 276, 151 P3d 143 (2007) (quoting *Jarvill*, 289 Or at 180). Moreover, a classification has a rational basis "if there is any conceivable state of facts which would support it." *Huckaba*, 281 Or at 26.

With this understanding of the requirements, the court will first identify the classification that Taxpayer claims violates the Uniformity Clauses. The court will then analyze whether any conceivable rational basis supports the classification.

Taxpayer argues that the relevant class of taxpayers consists of "marijuana * * *[,] hemp, alcohol, or pharmaceutical businesses." According to Taxpayer, hemp, pharmaceuticals and nonregulated nutritional supplements, like marijuana, offer health benefits; and marijuana and alcohol each have recreational uses regulated by the same state agency. Taxpayer finds it irrational that business expense deductions would be denied to suppliers of only one product within this class.

The Department argues that the legislature's choice to incorporate Section 280E for state-regulated marijuana suppliers could well have been a rational outcome of a cost-benefit or efficiency analysis, particularly for the transition year 2015.[19] Recall that Measure 91 disconnected

---

[19] Although Measure 91 legalized the *possession* of marijuana for recreational use effective July 1, 2015, Measure 91 provided for licensed, regulated *sales* of marijuana for recreational use starting January 1, 2016. Or Laws 2015, ch 1, § 7(3). The 2015 legislature created an "early start" exception that authorized medical dispensaries to also sell marijuana for recreational use starting October 1, 2015. SB 460, § 2 (2015); LFO Report at 2-3.

from Section 280E only for the second half of 2015, an anomalous period, given that personal income taxpayers generally report on a calendar-year basis. Within the class that Taxpayer posits, Section 280E applied to marijuana businesses for *federal* income tax purposes regardless of any choice the legislature might make for *Oregon* personal income tax purposes. Because the federal tax was imposed at a higher rate, the disallowance of deductions for federal purposes already added a potential, and arguably substantial, cost to marijuana businesses and consumers. The Department points to a research report delivered to the Joint Committee on Implementing Measure 91 that estimates that Oregon taxes, including the effect of Section 280E, would add only 1.8 percent more to the price of marijuana products. Legislative Revenue Office, Research Report #3-14 (Sept 2014) at 4, 8, Exhibit 5 to Minutes, Joint Committee On Implementing Measure 91, June 18, 2015, *available at* https://olis.oregonlegislature.gov/liz/2015R1/Downloads/ CommitteeMeetingDocument/78710. The legislature could have weighed six months' worth of that additional cost to newly legalized suppliers and consumers against the administrative benefit of simplification for suppliers and for the Department arising from conforming to the Internal Revenue Code, including the simplicity of avoiding a mid-tax-year change in rules.[20] The court finds the Department's argument persuasive and concludes that the Uniformity Clauses do not invalidate Oregon law incorporating Section 280E in determining Taxpayer's taxable income.

## 2. *Excessive Fines Clause*

The court next considers Taxpayer's argument that Oregon's incorporation of Section 280E against his marijuana

---

[20] Simplicity for taxpayers and tax administrators was a factor that likely influenced the legislature and the people, respectively, to incorporate federal definitions in the first place, both in the Personal Income Tax Act of 1969 and in the Income Definition Provision in Article IV, section 32 of the Oregon Constitution. *See* Draft Memorandum from Chief Counsel Carlisle B. Roberts to State Tax Commission Chair Charles H. Mack at 3 (Aug 19, 1968) (included in legislative bill file for HB 1026 (1969) discussing goal of simplifying dual tax return preparation), *available at* http://records.sos.state.or.us/ORSOSWebDrawer/Record/1936461 (1968 Roberts Memorandum); Voter's Pamphlet, General Election, Oct 22, 1970, at 11, *available at* https://digital.osl.state.or.us/islandora/object/osl%3A64330/ datastream/OBJ/view (argument in favor of Measure 2) (conformance to "save the state and the taxpayers time and money by keeping the method of filing state income tax returns relatively simple").

business violates Oregon's Excessive Fines Clause. Article I, section 16, of the Oregon Constitution states:

> "Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense.—In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the Court as to the law, and the right of new trial, as in civil cases."

Taxpayer fails to cite dispositive precedent. In *Oberg v. Honda Motor Co.*, the Oregon Supreme Court held that Article I, section 16, "applies only to criminal cases." 316 Or 263, 273-75, 851 P2d 1084 (1993) (applying three-part review pursuant to *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992)), *rev'd on other grounds*, 512 US 415, 114 S Ct 2231, 129 L Ed 2d 336 (1994). This is not a criminal case. Therefore, Article I, section 16, does not apply.

C.  *Does the Sixteenth or Eighth Amendment to the United States Constitution invalidate Oregon's incorporation of Section 280E for tax year 2015?*

The court now turns to Taxpayer's arguments that the court must allow his business expense deductions because Section 280E violates the Sixteenth Amendment[21] to the United States Constitution and the Excessive Fines Clause[22] of the Eighth Amendment. The court starts by considering the extent, if any, to which the Oregon legislature intended the court to undertake an analysis of the validity of a federal law before determining that the legislature has "incorporated" it into Oregon personal income tax law. As discussed below, the court tentatively concludes that, when a litigant claims that an incorporated provision violates the federal constitution or other federal law, the court must determine whether the incorporated provision was valid, and therefore "in effect," under federal law; however, in doing so, the court must apply federal case law and, in

---

[21] "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." US Const, Amend XVI.

[22] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US Const, Amend VIII.

appropriate circumstances, federal administrative interpretations—at least those cases and administrative interpretations that were publicly available when the legislature
last undertook its mandatory review of income tax laws.
Assuming that the incorporated provision was in effect for
federal law purposes, the analysis shifts: if the federal constitutional requirement at issue does not apply against the
states, the inquiry is over and the argument for challenging
the incorporated provision fails. If the federal constitutional
requirement does apply against the states, the court must,
as a final matter, test whether the incorporated provision *as
a state law* violates the federal constitutional requirement.
For this final step of the analysis, the court again applies
administrative and judicial interpretations of federal law
insofar as practicable, but in any event the court is bound by
decisions of the United States Supreme Court.

The court arrives at this tentative framework by
considering two possible alternative meanings of the concept of incorporating federal law.

1.  *"Incorporation" of federal law: alternative (a)—
    scrivener's shortcut*

The 1969 legislature substantially amended Oregon's
personal income tax law, replacing what had been a generally self-contained set of laws closely *resembling* the income
tax provisions of the federal Internal Revenue Code with a
substantially slimmer set of provisions that define key terms
*by reference to* federal law. *See* Or Laws 1969, ch 493 (repealing and replacing ORS chapter 316).[23] Taxpayer's argument
raises the question whether (a) Oregon's incorporation of a
Code provision is solely in the nature of a scrivener's shortcut that substitutes references to Code passages for words
that otherwise would be printed in the ORS; or (b) the Code
provision also must be valid as federal law before it can be
considered to have been incorporated into Oregon law.

If alternative (a) applies, it is irrelevant that a particular Code provision might violate a requirement of the

---

[23] As a nonscientific illustration, the court notes that the 1967 edition of
chapter 316 comprised 48 pages, while the 1969 edition incorporating federal law
by reference comprised only 22 pages. *Compare* ORS ch 316 (1967 replacement
part) *with* ORS ch 316 (1969).

United States Constitution, so long as that federal constitutional requirement does not apply against the states. For example, under alternative (a), the court in this case would reject Taxpayer's Sixteenth Amendment argument without further analysis, because the Sixteenth Amendment relates only to Congress's obligation to apportion certain tax burdens among the states based on federal census data, a scheme that neither applies to any state nor has any counterpart under Oregon law. *See Curtis v. Dept. of Rev.*, 17 OTR 414, 425 (2004), *aff'd* 338 Or 579, 112 P3d 330 (2005). On the other hand, under alternative (b), this court would be required to determine whether the incorporated provision of federal law was valid, applying federal principles of statutory and constitutional interpretation.

The Department appears to contend initially for alternative (a), suggesting that the court may lack jurisdiction to rule on Taxpayer's Sixteenth Amendment argument because the question whether "a federal law violates the federal constitution, for its own sake," does not arise under the "tax laws of this state." ORS 305.410(1). The Department relies in part on the Oregon Supreme Court's statement that "[t]he legislature's incorporation by reference is equivalent to its having republished the specified federal provisions in the state statutes." *Okorn v. Dept. of Rev.*, 312 Or 152, 155, 818 P2d 928 (1991), *aff'd*, 11 OTR 385 (1990).

The court is not persuaded that the Oregon legislature intended the court to so easily ignore whether the text of a Code provision is valid under federal law. This portion of the Department's argument overlooks the text of two of the three main Oregon personal income tax statutes that achieve the incorporation of federal law. First, ORS 316.012 contains a textual clue:

> "Any term used in this chapter has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter. Except where the Legislative Assembly has provided otherwise, any reference in this chapter to the laws of the United States or to the Internal Revenue Code refers to the laws of the United States or

to the Internal Revenue Code as they are amended *and in effect*:

"(1)   On December 31, 2014; or

"(2)   If related to the definition of taxable income, as applicable to the tax year of the taxpayer."

(Emphasis added.) This first statute thus states that laws are incorporated as "in effect" as of a certain date or a certain tax year. Second, as discussed in more detail below, ORS 316.032(2) directs the Department to "apply and follow * * * judicial interpretations of the federal income tax law." These statutes raise a serious problem with alternative (a): it does not take into account the possibility that one or more federal courts might have declared a provision of federal income tax law void and of no effect. As an extreme example, even if a statute were to become deadwood because the United States Supreme Court held it invalid, the interpretation under alternative (a) apparently would require this court to treat it as incorporated into Oregon law unless and until Congress actually removed it from the Code or the Oregon legislature eliminated it by enacting a modification to federal "taxable income." In the meantime, Oregon taxpayers would be required to ignore the provision when completing their federal returns, but to apply it when filing Oregon returns, a result directly contrary to the legislature's policy expressed in the third statute relevant to incorporation: to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income * * *." ORS 316.007(1); *see also* 1968 Roberts Memorandum at 3. Neither party has fully briefed the many facets of alternatives (a) and (b), and in light of its conclusions below the court does not, in this case, undertake a complete statutory analysis of whether the legislature intended alternative (a) to apply.[24]

---

[24] The court notes that the Oregon Supreme Court in *Okorn* had no reason to, and did not, consider either of the interpretive paths this court labels as alternatives (a) and (b). In *Okorn*, the taxpayer argued that he was "not a federal taxpayer" under various theories, and that Oregon had no authority to impose personal income tax on him unless he was one. 312 Or at 154 ("The plaintiff argues that the application of Oregon income tax to an Oregon citizen is contingent on that citizen being a federal taxpayer."). However, as pointed out in this court's opinion in the case, Oregon retains a freestanding definition of "taxpayer" that does not refer to federal law at all. *See* 11 OTR at 386-87 (citing ORS

Rather, for today the court assumes, without deciding, that the legislature did not intend the court to stop at the bare text of federal statutes that were in the Code as of the reference date. The court thus proceeds to alternative (b).

2.   *"Incorporation" of federal law: alternative (b)—determine validity under federal law, applying federal authorities*

Under alternative (b), the issue is to what extent this court is required to apply federal case law or administrative determinations in determining the validity of an incorporated provision of the Code. The United States Supreme Court has not considered the validity of Section 280E, and as a general rule Oregon courts are not bound by interpretations of lower federal courts. *See, e.g.*, *J. M. v. Oregon Youth Authority*, 288 Or App 642, 645-46, 406 P3d 1127 (2017) ("Oregon courts are bound by the Oregon Supreme Court's interpretation of federal law, regardless of any competing pronouncement by a lower federal court. *** The only federal court that controls over the Oregon Supreme Court on matters of federal law is the United States Supreme Court."), *aff'd* 364 Or 232, 434 P3d 402 (2019) ("lower federal courts have no binding authority over this court"). However, as noted above, the legislature has given express direction to the Department, as administrator of the Oregon personal income tax laws:

"Insofar as is practicable in the administration of this chapter, the department shall apply and follow the administrative and judicial interpretations of the federal income tax law. When a provision of the federal income tax law is the subject of conflicting opinions by two or more federal courts, the department shall follow the rule observed by the United States Commissioner of Internal Revenue

---

316.022(7)). The Supreme Court addressed that point when it stated, "Whether the taxpayer paid federal tax is irrelevant. His duty to pay state income tax is based on state law and is not contingent on the payment of federal tax." 312 Or at 155 n 2. Read in context, the Supreme Court's opinion does not say anything one way or the other about whether federal tax statutes are incorporated into Oregon law regardless of their validity under the United States Constitution. Rather, the court was emphasizing that, *if* a federal law is incorporated by reference, it *is* an Oregon law, and it binds Oregon taxpayers as such. *See id.* at 155 ("The legislature's incorporation by reference is equivalent to its having republished the specified federal provisions in the state statutes.").

until the conflict is resolved. Nothing contained in this sec-
tion limits the right or duty of the department to audit the
return of any taxpayer or to determine any fact relating to
the tax liability of any taxpayer."

ORS 316.032(2) (codifying Or Laws 1969, ch 493, § 10(2)).

The Oregon Supreme Court enforced this require-
ment against the Department in *Deblock v. Dept. of Rev.*, 286
Or 735, 596 P2d 560 (1979), applying the Commissioner's
interpretation of the deductibility of certain travel expenses
under section 162(a)(2) of the Code instead of the interpreta-
tion adopted in several federal court decisions, even though
the Department argued that the Commissioner's interpreta-
tion contradicted the legislative history of the Code as well as
the Commissioner's own regulations. The Oregon Supreme
Court noted that the determination of "conflicting opinions"
within the meaning of ORS 316.032(2) might be somewhat
"obscure" outside the context of a classic split between two
federal appellate circuits, but the court summed up the
overall intent of the statute as follows:

> "[I]n case of a conflict ORS 316.032 instructs the Department
> to follow the rule *observed by* the commissioner. We take the
> emphasized words to mean that the legislature cared more
> about trying to maintain parallel rules of tax adminis-
> tration in practice than about policing the commissioner's
> interpretation of the federal tax laws when the correct
> interpretation had not been settled by federal courts."

*Deblock*, 286 Or at 741 (emphasis in original). The Depart-
ment invited the court to apply interpretations of the United
States Tax Court in which the commissioner had not acqui-
esced, but the court declined to do so. *See id.* at 743; *see also*
*Baisch v. Dept. of Rev.*, 316 Or 203, 209, 850 P2d 1109 (1993)
("Although this controversy concerns taxpayers' Oregon
personal income taxes, *we apply* federal tax laws and the
interpretations of those laws rendered by federal courts."
(Emphasis added.)).

*Deblock* makes clear that, at the very least, ORS
316.032(2) does not permit the Department to second-guess
an apposite interpretation of federal law incorporated
in ORS chapter 316, where that interpretation is shared
by the commissioner and all the federal courts that have

considered the matter. And in that circumstance, this court, too, must apply the same interpretation, so as to effect the legislature's intention to create parallel rules for the sake of simplicity.[25] *See Baisch*, 316 Or at 209; *Hintz v. Dept. of Rev.*, 13 OTR 462, 466 (1996) ("because there is a conflict among the federal courts, *this court must* follow the rule observed by [the commissioner].") (emphasis added).[26]

    3.   *Constitutional issues under ORS 316.032(2)*

        a.   Taxpayer's arguments that applying federal administrative and judicial interpretations violates Oregon Remedy Clause and federal Due Process Clause

    In this case, it is Taxpayer who seeks to avoid federal court decisions and thus argues against the application of ORS 316.032(2). In his response, Taxpayer argues that, to the extent that ORS 316.032(2) requires the court to apply the interpretations of federal income tax law by lower federal courts and the IRS, the statute violates the Oregon Remedy Clause and the federal Due Process Clause. Taxpayer asserts that such a reading of ORS 316.032(2) "effectively denies [Taxpayer] any forum in which he may challenge the correctness of any prior administrative or judicial decisions." The Department, on the other hand, argues that the requirement in ORS 316.032(2) is merely a mechanism by which the legislature more clearly defines the law being incorporated.

---

[25] The court sees no reason to apply the directive in ORS 316.032(2) differently merely because this case involves the constitutional validity of Section 280E, as opposed to resolving a "skirmish" of competing interpretations of federal statutory text as in *Deblock*. *See* 286 Or at 738. Both kinds of issues involve administration of the personal income tax, as well as "interpretations of the federal income tax law."

[26] Both parties refer to a footnote in this court's opinion in *Dept. of Rev. v. Sedgewick*, ___ OTR ___, (July 29, 2020) (slip op at 8 n 15.), where the court, in an explanation of legal background, "contrast[ed]" the directive to *the Department* in ORS 316.032(2) to apply interpretations of lower federal courts and the Internal Revenue Service (IRS) with the general rule expressed in *J. M. v. Oregon Youth Authority* that *this court* is bound only by interpretations of federal law by the supreme courts of Oregon or the United States. As the Department correctly notes in this case, *Sedgewick* did not raise the issue discussed in this section of this order because there were no authoritative federal judicial or administrative interpretations on point in that case. Nothing in *Sedgewick* should be read as conflicting with the discussion in this order of ORS 316.032(2) and *J. M. v. Oregon Youth Authority*.

The Remedy Clause declares that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Or Const, Art I, § 10. This clause "limits the legislature's substantive authority to alter or adjust a person's remedy for injuries to person, property, and reputation." *Horton v. OHSU*, 359 Or 168, 173, 376 P3d 998 (2016). The Remedy Clause applies when the law imposes a duty on one person toward another and the legislature alters the remedy for breach of that duty, as for example, when the legislature caps the dollar amount of damages that a plaintiff may recover for personal injury. *See, e.g.*, *id.* (cap on awards under Oregon Tort Claims Act); *Busch v. McInnis Waste Systems, Inc.*, 366 Or 628, 468 P3d 419 (2020) (cap on noneconomic damages awards under ORS 31.710(1) for claims other than under Tort Claims Act or workers compensation claims). Taxpayer does not identify what duty, if any, the state owes him or how the state may have breached that duty. But assuming away those issues, the court does not see how ORS 316.032(2) has limited any remedy of Taxpayer. In directing the Department, and by extension this court, to "apply and follow" federal administrative and judicial interpretations of federal law, the legislature has declared the law to consist not only of the relevant provisions of the Code but also those specific interpretations of the Code, to the extent they can be applied practicably. A taxpayer aggrieved by the Department's application of those interpretations retains all rights to appeal to the Department and to this court. No doubt the application of federal administrative and judicial interpretations will sometimes work against the taxpayer, just as it worked against the Department in *Deblock*. But *any* pronouncement of the law may cause a favorable or unfavorable result in a particular case, regardless of whether the legislature articulates the law in a self-contained section of the ORS or by reference to an outside document such as a federal statute or court opinion. Incorporation of federal case law and administrative interpretations does not deprive a party of the right to sue or to recover; rather, it defines what law the parties are litigating about. The court rejects Taxpayer's argument under the Remedy Clause.

The court understands Taxpayer's argument under the federal Due Process Clause as procedural: he claims

he is denied any forum to challenge the correctness of the administrative or judicial interpretations incorporated into Oregon law. The Due Process Clause of the Fourteenth Amendment states: "[N]or shall any State deprive any person of life, liberty or property without due process of law." US Const, Amend XIV. A hornbook definition of "procedural due process" is that, when the power of government is to be used against a person's life, liberty or property, the person has a right to a fair procedure, following previously declared rules for adjudicating the claim through a neutral decisionmaker. *See* Rotunda and Nowak, 3 Treatise on Const. L. § 17.1 (May 2021 update). The court does not see a due process issue here. The state action at the root of Taxpayer's argument was the enactment of a general law with substantive content with which Taxpayer disagrees, not enforcement against a particular taxpayer or curtailment of that taxpayer's right to appeal the enforcement. True, ORS 316.032(2) declares the law by reference to decided cases or published administrative interpretations, and Taxpayer apparently views that as preventing him from litigating the points of law decided by the federal courts or the IRS. But the legislature could have declared the law differently with the same effect on Taxpayer, using many sentences spelled out in a bill to restate the holdings of the courts instead of simply directing the Department to apply and follow those decisions. If the legislature had done so, Taxpayer would have no argument; the legislature's choice to express itself one way or the other does not deny Taxpayer's right to procedural due process.

b.  Application of Nondelegation Clause to ORS 316.032(2)

Although the court agrees with the Department that the legislature's choice to require the Department to apply and follow federal administrative and judicial interpretations generally is within the legislature's authority, the court notes a possible limitation as to the date of such interpretations. The Income Definition Provision allows the legislature to define taxable income "by reference to any provision of the laws of the United States as the same may be or become effective at any time or from time to time." Or Const, Art IV, § 32. This provision, added in 1970, is the source of the legislature's authority to use the "rolling

reconnection" approach noted above. Specifically, the phrase "or become effective" allows the legislature to define terms related to taxable income by reference to the Code "as applicable to the tax year of the taxpayer"—including future tax years—rather than by reference to the Code as it stood on a particular date in the past. ORS 316.012(2); *see* Or Const, Art I, § 21 (Nondelegation Clause) ("[N]or shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution *** ."); *Seale et al v. McKennon*, 215 Or 562, 566, 572, 336 P2d 340 (1959) (under Nondelegation Clause and other constitutional provisions, "[w]hen a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference, and not as subsequently modified *** ."). The Income Definition Provision also requires the legislature to review the income tax laws at least biennially, for the apparent purpose of identifying recent federal changes and deciding whether Oregon's laws should remain connected to them. *See* Or Const, Art IV, § 32 ("At each regular session the Legislative Assembly shall, and at any special session may, provide for a review of the Oregon laws imposing a tax upon or measured by income *** ."); 1970 Voters' Pamphlet at 13 (Ballot Title) ("[W]hen U. S. Congress changes method of computation, the changes are automatically adopted into Oregon law. The Oregon legislature, however, must review such changes when it meets in regular session and may modify or reject them."); *id.* at 10 (Explanation pursuant to ORS 254.210) ("Legislature will be required to review all federal tax changes at each regular session (optional at special sessions) and if it chooses may reject or modify such changes.").

Legislative history that the court considers related to the Income Definition Provision contains clear evidence that the purpose of that provision was to avoid the Nondelegation Clause. *See* Memorandum from State Tax Commission Attorney Carl N. Byers to Chief Counsel Carlisle B. Roberts (Feb 8, 1967) (included in legislative bill file for HB 1026 (1969) (discussing cases prohibiting legislature from delegating its lawmaking power prospectively), *available at* http://records.sos.state.or.us/ORSOSWebDrawer/Record/1936461

(1967 Byers Memorandum). However, it is unclear to the court whether the Income Definition Provision's exception to the Nondelegation Clause extends to administrative and judicial interpretations that are issued and become publicly available after the legislature's most recent biennial review. Arguably, administrative and judicial interpretations are not a "provision" of the laws of the United States referred to in Article IV, section 32, as the term "provision" generally refers to a clause in a statute, constitution, or contract, rather than a holding in a case. *See Webster's Third New Int'l Dictionary*, 1827 (unabridged ed 1967) ("a clause in statute or contract") *Black's Law Dictionary* 1389-90 (4th ed 1968); *see also* Ballot Title (referring to changes by "U.S. Congress"); *but see* Explanation Pursuant to ORS 254.210 (referring to "changes in federal taxable income" and "federal tax changes"); 1970 Voters' Pamphlet at 11 (Argument in Favor) ("In keeping the Oregon and the federal laws the same, *full advantage* may be taken of administrative and court interpretations, rulings and decisions, by both the taxpayer and by state administration.").

Assuming that the Income Definition Provision does not create an exception to the Nondelegation Clause for judicial and administrative interpretations of the Code, then as of what date must such an interpretation exist in order to be subject to the directive in ORS 316.032(2) to "apply and follow"? The court tentatively concludes that the answer requires two steps. First, the court must conclude that the interpretation existed and was publicly available on the most recent date the legislature undertook a review of the income tax laws as contemplated in the Income Definition Provision. An interpretation issued after the most recent legislative review as of the time of the court's decision may well be persuasive, yet the court believes that ORS 316.032(2) may not require the Department or courts to "apply and follow" it because the Nondelegation Clause generally requires a subject incorporated by reference to exist on or before the date the Oregon legislature incorporates it into law.[27] Second,

---

[27] The Oregon Supreme Court has considered a "construction statute," ORS 659A.139(1), which states that certain Oregon employment discrimination laws "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the Americans with Disabilities Act of 1990, as amended." *See Washburn v. Columbia Forest Products, Inc.*, 340 Or 469, 134 P3d 161 (2006).

especially in audits and appeals involving older tax years, even if the directive in ORS 316.032(2) applies there may be a question whether the interpretation can be made to apply retroactively. *See United States v. Carlton*, 512 US 26, 32, 114 S Ct 2018, 129 L Ed 2d 22 (1994) (no due process violation where federal tax law, among other things, had "only a modest period of retroactivity").

As discussed below, the court concludes that its holding will not be affected, whether the court consults the available interpretations of federal lower courts for their persuasive authority, or the court is required by ORS 316.032(2) to "apply and follow" them. For that reason, the court has not requested briefing, or undertaken a full analysis under *Gaines* and constitutional principles, of whether the Income Definition Provision saves latter-day judicial and administrative interpretations from the Nondelegation Clause. The court's reasoning on this point will remain tentative until decision in an appropriate case.

4.   *Applying alternative (b), Section 280E does not violate the Sixteenth Amendment*

The court returns to the template above to analyze Taxpayer's argument that Section 280E violates the Sixteenth Amendment. The court first determines whether Section 280E was "in effect" for the "tax year of the taxpayer," in this case tax year 2015. *See* ORS 316.012(2).

---

The court resolved that case on other statutory interpretation principles, without a need to consider the constitutionality of the construction statute, and in other cases the Court of Appeals has assumed the validity of the statute but has not needed to decide the issue. *See Johnson v. BOLI*, 290 Or App 335, 340, 415 P3d 1071), *rev den*, 363 Or 599 (2018) (referring to same statute as a "lockstep" statute); *Evans v. Multnomah County Sheriff's Office*, 184 Or App 733, 739, 57 P3d 211 (2002) ("Assuming that ORS 659A.139 requires (or can require) Oregon courts to follow federal case law decided after the Oregon statute was enacted, *but see Seale et al. v. McKennon*, 215 Or 562, 572-73, 336 P2d 340 (1959) (state law cannot incorporate future federal regulations), nothing in [the later case of] *Toyota* is inconsistent with interpreting ORS 659A.112 as we have done here ***."). The court notes that the Washington Court of Appeals appears to have narrowly interpreted a statute that states: "It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters." *See Panag v. Farmers Ins. Co. of Washington*, 166 Wash 2d 27, 47, 204 P3d 885 (2009) (quoting RCW 19.86.920 but stating: "Federal court decisions are guiding, but not binding, authority.").

     <u>Applying lower court decisions under ORS 316.032(2)</u>. Although the United States Supreme Court has not answered that question, lower federal courts recently have done so. If the court "applies and follows" the recent lower court opinions, the court must conclude that the Sixteenth Amendment does not invalidate Section 280E because in all cases cited by either party, the federal courts considering the issue have upheld Section 280E. *See, e.g.*, *Alpenglow Botanicals LLC v. United States*, 894 F3d 1187, 1202 (10th Cir 2018) ("Congress's choice to limit or deny deductions for [ordinary and necessary business] expenses under § 280E does not violate the Sixteenth Amendment."), *cert den*, 139 S Ct 2745 (2019); *see also* Bittker & Lokken, *Federal Taxation of Income, Estates and Gifts*, ¶ 20.3.8 n 133.1. Taxpayer refers to dissenting opinions by several United States Tax Court judges in *Northern California Small Business Assistants Inc. v. Commissioner*, 153 TC 65, 77-90 (2019) (Gustafson, J., dissenting in part); *id.* at 90-94) (Copeland, J., dissenting in part). However, the majority opinion squarely upheld Section 280E, and the judge who authored one of the dissenting opinions in *Northern California* has since had occasion to acknowledge that the majority's opinion is precedential. *See Today's Health Care II LLC v. Comm'r*, 122 TCM (CCH) 126 (TC 2021) ("This Court has previously held, in a precedential Opinion reviewed by the entire Court pursuant to section 7460(b), that disallowing deductions for ordinary and necessary business expenses under section 280E does not violate the Eighth or Sixteenth Amendment. \*\*\* We will not depart from that holding in this case."). Taxpayer does not argue that a dissenting opinion creates a "conflict" for purposes of ORS 316.032(2), and in any event the commissioner's position aligns with the holdings of the courts. Brief for Appellee, *Patients Mut. Assistance Collective Corp. v. Comm'r*, 151 TC 176 (2018), *aff'd*, 995 F3d 671, 2021-1 US Tax Cas ¶ 50130 (9th Cir 2021).

     <u>Applying Supreme Court Decisions under *J. M. v. Oregon Youth Authority*</u>. Even if the court's tentative framework is incorrect, and ORS 316.032(2) does not require the court to apply and follow some or all[28] of the recent lower

---

[28] *Northern California* and *Alpenglow* were decided before the Oregon legislature's 2021 biennial session, in which the legislature passed House Bill 2457,

court opinions, the court reaches the same conclusion based on opinions of the United States Supreme Court. The Court declared early in the history of the federal income tax that "[t]he power to tax income \*\*\* is plain and *extends to the gross income*. Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Ice Co. v. Helvering*, 292 US 435, 440, 54 S Ct 788, 78 L Ed 1348 (1934) (emphasis added). The taxpayer in that case was a corporation formed to continue the business of a predecessor that had incurred net operating losses and become insolvent. The same shareholders, in substantially the same proportions, owned both corporations. After the taxpayer became profitable under the supervision of a creditors' committee and a stockholders' committee, the predecessor ceased to do business. The taxpayer asserted it was entitled to carry forward and claim the net operating losses of the predecessor. Rejecting arguments that the corporations were one and the same, the Court held that the deductions were disallowed, based on a close reading of the statutory text, which allowed a loss sustained by "any taxpayer" to be deducted from the net income of "the taxpayer." *Id*. at 440 (quoting Revenue Act of 1921, ch 136, § 204(b), 42 Stat 227, 231) (internal quotations omitted). Although the Court's statement that Congress's taxing authority "extends to the gross income" is not necessary to the Court's holding, the Court made that statement in full awareness of the Sixteenth Amendment. The Court referred to arguments based on a substance-over-form analysis under the Sixteenth Amendment; the Court did not reach those theories, declaring "not presently apposite" five cases, four of which cited the Sixteenth Amendment directly. *See id*. at 439 & n 1.

---

"reconnecting" with portions of the Code as amended and in effect on April 1, 2021, and otherwise retained "rolling" reconnection to the Code as in effect for the "tax year of the taxpayer." *See* Or Laws 2021, ch 456, § 21; Staff Measure Summary of HB 2457A (May 10, 2021) (discussing concepts of "rolling" reconnection and connection to Code at a particular point in time; summarizing federal law changes since 2019 session), *available at* https://olis.oregonlegislature.gov/liz/2021R1/Downloads/MeasureAnalysisDocument/60952. On the other hand, *Today's Health Care* was decided August 2, 2021, after those events. Under the court's tentative framework, *Today's Health Care* is not "incorporated" into Oregon law through ORS 316.032(2).

The Supreme Court has frequently applied its theory of "legislative grace" in concluding that deduction statutes are construed narrowly. *See, e.g.*, *Deputy v. du Pont*, 308 US 488, 493 (1940) (disallowing as ordinary and necessary business expenses any deduction for payments by shareholder of expenses of corporation); *IINDOPCO, Inc. v. Commissioner*, 503 US 79, 112 S Ct 103, 9117 L Ed 2d 226 (1992) (denying target company's deduction—but allowing capitalization—of investment banker and legal fees paid in course of acquisition by acquiring company); *Comm'r v. Sullivan*, 356 US 27, 28, 78 S Ct 512, 2 L Ed 2d 559 (1958) (rejecting Commissioner's disallowance of deductions for illegal gambling business in absence of disallowance statute) ("Deductions are a matter of grace and Congress can, of course, disallow them as it chooses. \* \* \* If we enforce as federal policy the rule espoused by the Commissioner in this case, we would come close to making this type of business taxable on the basis of its gross receipts, while all other business would be taxable on the basis of net income. If that choice is to be made, Congress should do it."). This court concludes that the doctrine of Congressional discretion to disallow deductions from gross income is so firmly anchored in Supreme Court precedent that Section 280E would survive a Sixteenth Amendment challenge in that Court. Although taxpayers and scholars, like the dissenting judges in *Northern California*, continue to advance serious arguments to the contrary,[29] this court holds that the Sixteenth

---

[29] The long history of the "direct tax" limitations, and efforts to challenge and avoid them, raises fundamental issues of this nation's federalism, including slavery and the distribution of power among rural and urban states. *See* Bittker & Lokken, *Federal Taxation of Income, Estates and Gifts*, ¶ 1.2 (explaining theories of origin of constitutional prohibition against "direct" taxes without apportionment, challenge to pre-Sixteenth Amendment income tax in *Pollock v. Farmers' Loan & Trust Co.*, 157 US 429, 15 S Ct 673, 39 L Ed 759 (1895), origin of Sixteenth Amendment). This complexity leaves room for continued debate about the definition of the "incomes" that the Sixteenth Amendment allows Congress to tax without apportionment. *See, e.g.*, Erik M. Jensen, *Marijuana Businesses, Section 280E, and the 16th Amendment*, Tax Notes Federal at 1647 (Aug 31, 2020) ("[I]t's quite a leap from concluding that Congress must have some flexibility to concluding that Congress can deny all deductions (and other offsets, like credits and COGS adjustments) to specific types of taxpayers."); Erwin N. Griswold, *An Argument Against the Doctrine that Deductions Should Be Narrowly Construed as a Matter of Legislative Grace*, 56 Harv L Rev 1142, 1144 (1943) ("Taken literally, [the *New Colonial Ice* formulation] would mean that Congress may deny all deductions and impose a tax on gross income. This is a large question, about which there may be reasonable doubts, even today. Could Congress, for example,

Amendment does not render Section 280E ineffective and does not preclude Oregon from incorporating Section 280E under ORS 316.032(2).[30]

5.  *Taxpayer's Eighth Amendment Excessive Fines Clause argument*

Section 280E as federal law: Applying lower court decisions under ORS 316.032(2). As with Taxpayer's Sixteenth Amendment argument, the court initially inquires whether Section 280E, as a federal statute, is valid under the Eighth Amendment's Excessive Fines Clause, again applying the decisions of federal courts and administrative interpretations as directed in ORS 316.032(2). And as with Taxpayer's Sixteenth Amendment argument, this inquiry is not difficult, because many of the same federal cases involve both issues, and all of those cases have upheld the validity of Section 280E under the Excessive Fines Clause. *Alpenglow*, 894 F3d 1187 (10th Cir 2018) (rejecting argument that Section 280E is a "penalty" enforcement of which violates Eighth Amendment); *Northern California*, 153 TC 65 (2019) (rejecting claim that Section 280E is a "penalty"; "disallowing a deduction from gross income is not a punishment"). Taxpayer cites no conflicting judicial decisions or any interpretation of the commissioner that conflicts with the federal judicial decisions. The court concludes that the Excessive Fines Clause of the United States Constitution does not invalidate Section 280E for federal law purposes.

Section 280E as federal Law: Applying Supreme Court decisions under *J. M. v. Oregon Youth Authority*. The court next considers the possibility that its tentative

---

impose the tax on the entire proceeds from the sale of property without any allowance for the cost of the property? Could it deny all deduction for wages paid? But there is no need to resolve such questions, nor to deny that Congress has very great power over the deductions which are allowed. The fact remains that Congress has never sought to tax gross income."). For the reasons discussed, however, this court is of the view that "[t]ax allowances for the cost of earning income are not required by the Constitution ***." Bittker & Lokken ¶ 20.1.1.

[30] The court notes that debate also continues on a related topic not at issue in these parties' cross-motions: if the Sixteenth Amendment allows an unapportioned tax on gross income (which under IRC section 61(a) includes "gains" from dealings in property), does it also allow an unapportioned tax on gross receipts (defined to include gross proceeds "without any allowance for the cost of the property.")? *See Griswold* at 1144. Nothing in this order expresses a view on this topic.

framework is incorrect, and that ORS 316.032(2) does not require the court to apply and follow the recent lower court decisions considering the validity of Section 280E under the Eighth Amendment. The court turns to United States Supreme Court decisions under the Eighth Amendment.

Unlike Oregon's Excessive Fines Clause, application of the federal clause is not limited to criminal cases. The United States Supreme Court has applied a two-part analysis to determine whether a civil forfeiture requirement violates the clause. *US v. Bajakajian*, 524 US 321, 329, 118 S Ct 2028, 141 L Ed 2d 314 (1998) (holding that requirement in 18 USC section 982(a)(1) to forfeit currency not reported prior to transport outside United States violated Excessive Fines Clause). First, the clause applies to a "fine," meaning a payment to a sovereign as punishment for an offense. *See id.* at 327. Second, the clause applies only if the fine is "excessive," meaning disproportionately high in relationship to the gravity of the offense it is designed to punish. *See id.* at 334.

Starting with the "fine" requirement, this court considers whether the amount is levied "as punishment." In *Bajakajian*, the Court examined the purpose of the law at issue and had "little trouble" concluding that the requirement to forfeit unregistered currency was a punishment. *Id.* at 329. The text of the forfeiture statute required forfeiture as an additional sanction in sentencing a person already convicted of willfully violating the registration requirement. In arguing that the purpose of the forfeiture was not punitive, the government asserted that the forfeiture helped to deter not only reporting violations, but also other crimes in which the cash might be involved. However, this argument did not help the government because the Court identified deterrence as itself as a "goal of punishment." *Id.* The government also argued that the forfeiture had a remedial purpose. The Court agreed that a remedial purpose is not punitive, but the Court declined to conclude that the currency forfeiture requirement was remedial, because a forfeiture was incapable of remedying the loss to the government of registration information it would have received if the defendant had complied. *Id.* After considering other arguments

particular to the history of forfeiture, the Court held that the forfeiture amounted to payment of a "fine." *Id.* at 334. Although the Court did not refer to a particular analytical framework, this court views *Bajakajian* as deciding the "fine" issue as a question of legislative intent by reference to the text and structure of the statute. *See Etter v. Dept. of Rev.*, 360 Or 46, 52, 377 P3d 561 (2016).

The parties refer to additional United States Supreme Court decisions involving taxes other than the federal income tax. Those cases have considered the text, structure and legislative history of statutes in deciding whether a requirement to pay an amount to a government has a punitive purpose. In holding that a state statute that purported to impose a tax violated the federal Double Jeopardy Clause,[31] the Court noted that the text evinced not only a "motivation" to raise revenue, but also an intention to deter crime by "burdening" violators of the law "instead of law abiding taxpayers." *Montana Dept. of Rev. v. Kurth Ranch*, 511 US 767, 780 & n 18, 114 S Ct 1937, 128 L Ed 2d 767 (1994) (citing preamble in Mont Laws, ch 563 (1987).[32] The Court also examined the rate of the purported tax, finding it "remarkably high" at more than eight times the value of

---

[31] US Const, Amend V. ("No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb * * *.").

[32] The preamble reads, in full:

"WHEREAS, dangerous drugs are commodities having considerable value, and the existence in Montana of a large and profitable dangerous drug industry and expensive trade in dangerous drugs is irrefutable; and

"WHEREAS, the state does not endorse the manufacturing of or trading in dangerous drugs and *does not consider the use of such drugs to be acceptable*, but it recognizes the economic impact upon the state of the manufacturing and selling of dangerous drugs; and

"WHEREAS, it is appropriate that some of the revenue generated by this tax be devoted to continuing investigative efforts directed toward the identification, arrest, and prosecution of individuals involved in conducting illegal continuing criminal enterprises that affect the distribution of dangerous drugs in Montana.

"THEREFORE, the Legislature of the State of Montana does not wish to give credence to the notion that the manufacturing, selling, and use of dangerous drugs is legal or otherwise proper, but finds it appropriate in view of the economic impact of such drugs to tax those who profit from drug-related offenses and to dispose of the tax proceeds through providing additional anti-crime initiatives without burdening law abiding taxpayers."

Mont Laws, ch 563 (1987) (emphases added).

the drugs that were the subject of the tax. *Id.* at 780-81. The statute also contained features that the Court described as "unusual" and "exceptional." First, the "so-called tax is conditioned on the commission of a crime. That condition is 'significant of penal and prohibitory intent rather than the gathering of revenue.'" *Id.* at 781 (quoting *United States v. Constantine*, 296 US 287, 295, 56 S Ct 223, 80 L Ed 233 (1935)). Second, the tax "purports to be a species of property tax" but "is levied on goods that the taxpayer neither owns nor possesses when the tax is imposed [because those goods had been] previously confiscated \*\*\*." *Id.* at 783. Finally, the Court found no evidence that the assessment had a remedial purpose. *Id.* at 784 (state did not claim that assessment "even remotely approximates" costs of investigating or prosecuting the taxpayers or that assessment "roughly relates to any actual damages that they caused the State"); *see also Bailey v. Drexel Furniture Co.*, 259 US 20, 36-37, 42 S Ct 449, 66 L Ed 817 (1922) (invalidating, as violation of Tenth Amendment, federal tax on employer of child labor; tax imposed "heavy exaction" of 10 percent of net income for one year for one or more violation, included *scienter* requirement, and was collected by Secretary of Labor, not Secretary of Treasury); *cf. Nat'l Fed'n of Indep. Bus. v. Sebelius,* 567 US 519, 565-66, 132 S Ct 2566, 183 L Ed 2d 450 (2012) (examining whether federal exaction is penalty violating Commerce Clause vs. a tax valid under Congress's delegated taxing authority based on degree of burden, inclusion of *scienter* requirement, and administrative authority charged with collecting the tax).[33]

      The court now applies the Supreme Court's opinions to Section 280E to test whether that statute was "in effect" under the Eighth Amendment. The text of Section

---

[33] In considering whether a statutory scheme was so punitive as to transform a civil remedy into a criminal penalty for double jeopardy purposes, the Court used a seven factor test: "(1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned." *Hudson v. United States*, 522 US 93, 99-100, 118 S Ct 488, 139 L Ed 2d 450 (1997) (internal quotations omitted).

280E is silent as to Congress's motivation, in contrast to the Montana statute at issue in *Kurth Ranch*. The structure of Section 280E lacks the types of indicia of punitive intent in *Kurth Ranch* or *Bajakajian*: Section 280E does not require conviction of a crime, nor does it apply during criminal sentencing. There is no requirement of a particular mental state like the *scienter* requirement at issue in *Drexel Furniture*, as discussed in *Sibelius*, and as is present in the federal statutes defining crimes involving controlled substances. *Cf., e.g.*, 21 USC § 841 ("it shall be unlawful for any person *knowingly or intentionally* \* \* \* to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."). And Section 280E is not, in structure, an "unusual" or one-off tax comparable to Montana's purported "property" tax at issue in *Kurth Ranch*. Section 280E is a component of Part IX of the income computation portions of the Code, which includes more than 20 sections that disallow or limit deductions. *See* IRC § 261 ("In computing taxable income no deduction shall in any case be allowed in respect of the items specified in this part."); IRC §§ 262 - 280H. Those items reflect various policy choices of Congress over time on issues ranging from personal or family living expenses (Section 262) to expenditures for acquisitions made to avoid or evade income tax (Section 269), the use of personal service corporations used to avoid or evade income tax (Section 269A), "lavish or extravagant" business meals (Section 274), and depreciation on luxury automobiles (Section 280F). *See also* IRC §§ 162(c) (disallowing deductions for illegal bribes and kickbacks), 162(f) (fines and penalties), and 162(g) (certain treble damages). Finally, unlike the tax at issue in *Drexel Furniture*, Section 280E is administered by the IRS, as opposed to the Drug Enforcement Administration or another law enforcement agency.

It is true that Section 280E singles out for adverse treatment particular conduct that may, when combined with a particular mental state, constitute a crime. Under the Court's reasoning, this structural feature is an indicium of punitive intent to the extent that it tends to deter that conduct. *See Bajakajian* at 334. It also is true that the amount of additional tax attributable to the disallowance of business expense deductions may be substantial for some taxpayers,

although the computation is necessarily highly individualized and is difficult to compare to the blunter measures in *Kurth Ranch* (tax = value x 8) and *Drexel Furniture* (tax = 10% of all net income for one year for hiring even one underage employee for one day). Evidence of a remedial purpose is scant, and in any event inconclusive. The court has found no structural clue suggesting a remedial purpose; Section 280E is simply one subcomponent of the income tax base, and the court is not aware of any earmark to compensate the federal government or crime victims for the costs of drug trafficking. A Senate report reprinted more fully below includes only a general reference to the fact that "the U.S. and its citizens are losing billions of dollars per year to [drug dealers]." S Rep No 97-494 Vol 1, 97th Cong, 2d Sess 309 (1982).

The court now considers the foregoing mix of factors in light of the United States Supreme Court's approach to deductions from gross income. In addition to recognizing broad discretion in Congress to withhold or limit such deductions as discussed above, the Court has, at least in the past, been willing to deny deductions, even without specific statutory support, for payments that the Court found "frustrat[e] sharply defined national or state policies \*\*\*." *Tank Truck Rentals v. Comm'r*, 356 US 30, 35, 78 S Ct 507, 2 L Ed 2d 562 (1958) (upholding denial of deductions for state overweight fines where taxpayer "deliberately operated its trucks overweight" because cost of fines was less than cost of compliance). This "public policy" doctrine persisted despite obvious tension with the policy favoring "neutral" taxation of net income regardless of criminal activity. *See Comm'r v. Tellier*, 383 US 687, 691, 86 S Ct 1118, 16 L Ed 2d 185 (1966) ("We start with the proposition that the federal income tax is a tax on net income, not a sanction against wrongdoing.") (allowing deduction for legal fees paid by securities dealer in unsuccessful defense against criminal charges); *Sullivan*, 356 US at 28-29. In the Tax Reform Act of 1969, Congress codified the disallowance for fines paid to a government and enacted disallowance provisions for payments constituting illegal bribes and kickbacks, as well as for treble damages under antitrust laws. *See* IRC § 162(c), (f), (g). The 1969 act is generally viewed as arresting the development of further common-law "public policy" disallowances. *See* Boris I.

Bittker, Martin J. McMahon & Lawrence Zelenak, *Federal
Income Taxation of Individuals* ¶ 11.04[1] (Nov 2020) (not-
ing possible continuing vitality of common-law public policy
doctrine in some areas); S Rep No 91-552, 91st Cong, 1st
Sess (1969), 91-552 (Tax Reform Act of 1969) *reprinted in*
1969 USCCAN 2027, 2311 ("The provision for the denial of
the deduction for payments in these situations which are
deemed to violate public policy is intended to be all inclu-
sive. Public policy, in other circumstances, generally is not
sufficiently clearly defined to justify the disallowance of
deductions."). So far as this court is aware, however, viola-
tion of "public policy" lives on as a basis for disallowance
of deductions, except that since 1969, Congress has largely
taken to itself the role of defining the conduct that violates
public policy. Indeed, a Senate Finance Committee report on
the act creating Section 280E states:

> "On public policy grounds, the Code makes certain other-
> wise ordinary and necessary expenses incurred in a trade
> or business nondeductible in computing taxable income.
> These nondeductible expenses include fines, illegal bribes
> and kickbacks, and certain other illegal payments.
>
> "*****
>
> "There is a sharply defined public policy against drug deal-
> ing. To allow drug dealers the benefit of business expense
> deductions at the same time that the U.S. and its citizens
> are losing billions of dollars per year to such persons is not
> compelled by the fact that such deductions are allowed to
> other, legal, enterprises. Such deductions must be disal-
> lowed on public policy grounds.
>
> "All deductions and credits for amounts paid or incurred
> in the illegal trafficking in drugs listed in the Controlled
> Substances Act are disallowed. To preclude possible chal-
> lenges on constitutional grounds, the adjustment to gross
> receipts with respect to effective costs of goods sold is not
> affected by this provision of the bill."

S Rep No 97-494 Vol 1, 309. The court finds this histori-
cal development, resulting in numerous statutes that limit
deductions for expenses arising from behavior considered to
violate public policy, an important overlay on the general
text and structure of Section 280E that weighs substan-
tially against treating Section 280E as a "fine" for Eighth
Amendment purposes.

After applying the Court's decisions in *Bakjakajian*, *Kurth Ranch* and other cases, and taking into account the Court's long history of treating deductions, including business expense deductions, as an exercise of legislative discretion, coupled with the Court's tolerance for limitations based on "public policy," this court is persuaded that Section 280E as federal law does not violate the Eighth Amendment. The court finds no need to decide the second part of the test under *Bajakajian*, whether Section 280E imposes an "excessive" burden.

Section 280E as state law: Applying lower court decisions under Section 280E. The Eighth Amendment Excessive Fines Clause also applies to the states. *Timbs v. Indiana*, ___ US ___, 139 S Ct 682, 686-87, 203 L Ed 2d 11 (2019). Therefore, under the tentative framework described above, the court next determines whether that clause invalidates Section 280E *as incorporated in Oregon personal income tax law.* Once again, pursuant to ORS 316.032(2), the court first seeks to apply and follow federal court decisions and federal administrative interpretations that have considered the application of the Eighth Amendment. Although federal courts can (as in *Kurth Ranch*) decide whether a state tax law violates the Eighth Amendment, none have done so with respect to Section 280E as incorporated into Oregon law. The court does not find the opinions in *Alpenglow* and *Northern California* on point for purposes of analyzing whether Oregon's incorporation of Section 280E *as part of state law* violates the Eighth Amendment. Both opinions are premised on the scope of Congress's authority to levy taxes under Article I, section 8 of the United States Constitution, and on the Sixteenth Amendment's authorization to impose taxes on gross income without apportioning the burden among the states, to the extent that apportionment would be required by Article I, sections 2 and 9. *See Northern California*, 153 TC at 69; *Alpenglow*, 894 F3d at 1199-1200. Both courts reasoned that, because Congress clearly may tax gross income, any deductions from gross income are a matter of legislative grace, as stated in *New Colonial Ice. See Northern California*, 153 TC at 72 ("The Sixteenth Amendment does not accommodate the assertion that the disallowance of a deduction is a penalty. There is simply no way to reconcile the argument

that section 280E creates a penalty with the authority of Congress to tax gross income.").

In contrast to the taxing authority granted to Congress as one of its specifically enumerated powers, the taxing authority of the Oregon legislature has never been limited by federal or state constitutional apportionment clauses comparable to those in Article I, sections 2 and 9 of the United States Constitution. Therefore, there has been no state constitutional counterpart to the Sixteenth Amendment that might be construed [34] as specific authority to levy a gross income tax, with broad discretion to grant *or deny* deductions from gross income deriving from that specific constitutional source. Oregon, too, has adopted the view that deductions are a matter of legislative grace, but not as a corollary to a constitutional grant of discretion to withhold them unfettered by uniformity concerns. *See, e.g.*, *Keyes v. Chambers*, 209 Or 640, 646, 307 P2d 498, 501 (1957) (income tax credits); *cf. also Knowlton v. Moore*, 178 US 41, 20 S Ct 747, 44 L Ed 969 (construing federal Uniformity Clause in US Const, Art I, § 9 (providing "duties, imposts, and excises shall be uniform throughout the United States") to require not "intrinsic" uniformity but only geographic uniformity). This court does not consider it practicable to apply *Alpenglow* or *Northern California*. Instead, this court relies on the decisions of the United States Supreme Court discussed above.

Section 280E as state law: Applying Supreme Court decisions under *J. M. v. Oregon Youth Authority*. The court therefore reviews the text and structure of the 2015 and 2016 legislation that eliminated section 74 of Measure 91 and restored Oregon's connection from Section 280E for tax

---

[34] *See* Erik M. Jensen, *Marijuana Businesses, Section 280E, and the 16th Amendment*, Tax Notes Federal at 1643 (Aug 31, 2020) ("It's often said that the 16th Amendment authorized Congress to impose a tax on income, but that's misleading."). The Sixteenth Amendment "does not extend federal taxing power to new subjects but merely eliminates the requirement of apportioning a direct tax on income." Bittker & Lokken, ¶ 1.2.1. The court notes its own recent footnote in *Jimenez v. Dept. of Rev.*, 24 OTR 618, 624 n 4), which may have inadvertently reinforced this misperception by stating, without reference to apportionment, that "the federal government is a government of limited powers, but the Sixteenth Amendment specifically authorizes imposition of the federal income tax."

year 2015. First, nothing in the text of any of the 2015 or 2016 laws indicates any intent to punish marijuana suppliers for tax year 2015. There is no provision comparable to the Montana tax law at issue in *Kurth Ranch*, where the preamble stated an intention to "burden" persons profiting from "drug-related offenses," and the imposition of the tax was premised on conviction of a crime. The Oregon laws simply reinstate the text of ORS 316.680 that had been in place before Measure 91. Second, the structure of 2015 HB 3400, 2015 HB 2041 and 2016 SB 1601 strongly suggests that the legislature's purpose was to conform Oregon law to federal law for tax year 2015, consistent with a longstanding legislative purpose declared by statute and in accord with an Oregon constitutional amendment. See Or Laws 2015, ch 614, §178 (HB 3400 (2015)) (repealing Measure 91 operative dates and setting new operative date of January 1, 2016); Or Laws 2015, ch 699, §§ 2, 22 (HB 2041) (imposing a 17 percent tax on recreational sales beginning January 1, 2016.) Moreover, there is evidence that the legislature intended to conform the operative period of the disconnection from Section 280E to the operative period for other parts of the marijuana regulatory scheme. *See* Measure 91, § 7(3) (regulated sales of marijuana for recreational use starting January 1, 2016.) As discussed above, the economic effect of the disallowance of business expense deductions for Oregon personal income tax purposes does not appear to result in the kind of "remarkably high" rate or "heavy exaction" on marijuana suppliers that moved the Court to declare the taxes in *Kurth Ranch* and *Drexel Furniture* to be penalties; for the six months in 2015 for which the legislature reconnected to Section 280E, suppliers could pass on the additional cost, estimated to result in a price increase of about 1.8 percent. The 2015 and 2016 legislation does not require conviction of a crime as a condition of the disallowance of deductions, and the legislature used a standard mechanism (amendment of ORS 316.680) to achieve its result, rather than any "unusual" law change.

        The court concludes that the 2015 and 2016 amendments that eliminated section 74 of Measure 91 did not enact a "fine" within the meaning of the Eighth Amendment's Excessive Fines Clause. Because of this conclusion, the court

does not address whether the amendments could result in an "excessive" fine.

## IV.   CONCLUSION

In summary, the court concludes that, for tax year 2015, Oregon personal income tax law incorporated Section 280E, along with other federal provisions relating to the measurement of taxable income. Although the 2014 citizens' initiative known as Measure 91 disconnected from Section 280E for at least the second half of 2015, two laws that the legislature passed the next summer, 2015 HB 3400 and 2015 HB 2041, replaced that provision with a narrower disconnection provision that applies only to 2016 and later tax years. A 2016 act did not change that result. None of the legislature's changes violated the Full Text Clause, the Uniformity Clauses or the Excessive Fines Clause of the Oregon Constitution or the Sixteenth or Eighth Amendment to the United States Constitution. Now, therefore,

IT IS ORDERED that Plaintiff's Cross-Motion for Partial Summary Judgment is granted; and

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment is denied.