IN THE OREGON TAX COURT
REGULAR DIVISION
Personal Income Tax

| | | |
|---|---|---|
| DEPARTMENT OF REVENUE,<br>State of Oregon, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **TC 5404** |
| v. | ) | |
| | ) | **AMENDED ORDER GRANTING** |
| JAMES WAKEFIELD, | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **PARTIAL SUMMARY JUDGMENT** |
| Defendant. | ) | **AND DENYING PLAINTIFF'S CROSS-** |
| | ) | **MOTION FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT** |

This matter is before the court on the motion of Defendant (Taxpayer) for partial summary judgment seeking to overturn Plaintiff's (the Department's) imposition of the twenty-percent penalty for substantial understatement of net tax under ORS 314.402 (the Penalty) for tax year 2015, and the Department's cross-motion asking the court to sustain the Penalty.[1]

## I. FACTS

The following facts are uncontested. Taxpayer filed a timely 2015 Oregon personal income tax return on or about April 12, 2016. (*See* Ptf's Decl of Lawson at 1, ¶ 2.) Taxpayer's Schedule C described his business as "farmer/produce retail." (*See* Ptf's Decl of Enriquez, Ex A at 4.) Taxpayer's business in 2015 involved the sale of marijuana products. (*See* Def's Decl of Wakefield at 2, ¶¶ 7-8.) His Oregon return for 2015 did not indicate that his business involved

[1] Unless otherwise indicated, references to the Oregon Revised Statutes (ORS) are to the 2015 edition. This order is amended to correct a factual error that appeared in footnote 4 of the original order.

the growing, production, or sale of marijuana or marijuana products or that he had taken the position that Oregon had disconnected from section 280E of the Internal Revenue Code (Section 280E) with respect to such business.[2] (*See* Ptf's Decl of Enriquez, Ex D; Ex F; Ptf's Decl of Lawson at 1, ¶3.)

After audit, the Department reclassified a substantial portion of Taxpayer's Schedule C expenses as cost of goods sold and disallowed the remaining expenses on the grounds that the expenses were not deductible by reason of Section 280E as incorporated for Oregon personal income tax purposes. (*See* Ptf's Decl of Enriquez, Ex B.) As a result of those adjustments, the Department eventually assessed unpaid tax, interest and penalties, including the Penalty at issue here. (*See id.*, Ex C.) Although other computational issues remain to be addressed, there is no dispute that the Department determined that Taxpayer underreported his net tax by more than $2,400, and that the amount of the Penalty assessed and at issue is $7,087.[3] (*See* Ptf's Cross-Mot Part Summ J at 5; Def's Mot Part Summ J at 7.)

Taxpayer challenged the assessments in the Magistrate Division, which held in Taxpayer's favor on cross-motions for summary judgment, concluding that Oregon had disconnected from Section 280E for 2015. The Department appealed to this division.[4] In this division, the parties initially filed cross-motions for partial summary judgment limited to whether

---

[2] References to the Internal Revenue Code (IRC, or Code) are to the Internal Revenue Code of 1986, as in effect and operative for the tax year beginning on January 1, 2015.

[3] $2400 is the statutory threshold for imposition of the substantial understatement penalty against a noncorporate taxpayer. *See* ORS 314.402(2)(a).

[4] The Department's audit and the Magistrate Division appeal involved both tax year 2014 and tax year 2015. In a single decision, the magistrate granted summary judgment in favor of the Department as to tax year 2014 and in favor of Taxpayer as to tax year 2015. This case (TC 5404) constitutes the Department's appeal as to tax year 2015.

Oregon had disconnected from Section 280E for 2015. In an order issued February 3, 2022, the court held that Oregon had not disconnected from Section 280E. *Dept. of Rev. v. Wakefield*, 25 OTR 1 (2022) (*Wakefield*). The parties' instant motions are limited to the applicability of the Penalty, and specifically to whether Taxpayer had "substantial authority" for his position that Oregon had disconnected from Section 280E. (*See* Def's Mot Part Summ J at 6; Ptf's Cross-Mot Part Summ J at 5.)

## II. ISSUE

Was Taxpayer's treatment of his marijuana business expenses as deductible without limitation by Section 280E for tax year 2015 supported by substantial authority, with the consequence that the twenty-percent penalty for substantial understatement of net tax under ORS 314.402 does not apply?

## III. RELEVANT LAW

A. *ORS 314.402*

The relevant portions of ORS 314.402 provide:

"(1) If the Department of Revenue determines that there is a substantial understatement of net tax for any tax year under any law imposing a tax on or measured by net income, there shall be added to the amount of tax required to be shown on the return a penalty equal to 20 percent of the amount of any underpayment of tax attributable to the understatement.

"* * * * *
"(4) As used in this section:

"* * * * *
"(b) 'Understatement' means the excess of the amount of the net tax required to be shown on the return for the tax year over the amount of the net tax shown on the return, reduced by any portion of the understatement that is attributable to:

"(A) The tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment; or

"(B) Any item with respect to which:

"(i) The relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return; and

"(ii) There is a reasonable basis for the tax treatment of the item by the taxpayer."

B.      *Department's Rule and Incorporated Federal Treasury Regulation*

The Department's short rule interpreting "substantial authority" under ORS 314.402 provided at all relevant times: "'Substantial authority' has the same meaning as used in Treasury Regulation § 1.6662-4(d)." OAR 150-314.402(4)(b) (2013) (currently codified, without substantive amendment, as OAR 150-314-0209).

The referenced federal regulation states in relevant part:

"(2) The substantial authority standard is an objective standard involving an analysis of the law and application of the law to relevant facts. The substantial authority standard is less stringent than the more likely than not standard (the standard that is met when there is a greater than 50–percent likelihood of the position being upheld), but more stringent than the reasonable basis standard as defined in § 1.6662–3(b)(3). * * *

"(3)(i) There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment. All authorities relevant to the tax treatment of an item, including the authorities contrary to the treatment, are taken into account in determining whether substantial authority exists. The weight of authorities is determined in light of the pertinent facts and circumstances in the manner prescribed by paragraph (d)(3)(ii) of this section. There may be substantial authority for more than one position with respect to the same item. Because the substantial authority standard is an objective standard, the taxpayer's belief that there is substantial authority for the tax treatment of an item is not relevant in determining whether there is substantial authority for that treatment.

"(ii) The weight accorded an authority depends on its relevance and persuasiveness, and the type of document providing the authority. For example, a

case or revenue ruling having some facts in common with the tax treatment at issue is not particularly relevant if the authority is materially distinguishable on its facts, or is otherwise inapplicable to the tax treatment at issue. An authority that merely states a conclusion ordinarily is less persuasive than one that reaches its conclusion by cogently relating the applicable law to pertinent facts. * * * The type of document also must be considered. For example, a revenue ruling is accorded greater weight than a private letter ruling addressing the same issue. An older private letter ruling, technical advice memorandum, general counsel memorandum or action on decision generally must be accorded less weight than a more recent one. Any document described in the preceding sentence that is more than 10 years old generally is accorded very little weight. However, the persuasiveness and relevance of a document, viewed in light of subsequent developments, should be taken into account along with the age of the document. There may be substantial authority for the tax treatment of an item despite the absence of certain types of authority. Thus, a taxpayer may have substantial authority for a position that is supported only by a well-reasoned construction of the applicable statutory provision.

"(iii) [O]nly the following are authority for purposes of determining whether there is substantial authority for the tax treatment of an item: Applicable provisions of the Internal Revenue Code and other statutory provisions; proposed, temporary and final regulations construing such statutes; revenue rulings and revenue procedures; tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; court cases; congressional intent as reflected in committee reports, joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill's managers; General Explanations of tax legislation prepared by the Joint Committee on Taxation (the Blue Book); private letter rulings and technical advice memoranda issued after October 31, 1976; actions on decisions and general counsel memoranda issued after March 12, 1981 (as well as general counsel memoranda published in pre–1955 volumes of the Cumulative Bulletin); Internal Revenue Service information or press releases; and notices, announcements and other administrative pronouncements published by the Service in the Internal Revenue Bulletin. Conclusions reached in treatises, legal periodicals, legal opinions or opinions rendered by tax professionals are not authority. The authorities underlying such expressions of opinion where applicable to the facts of a particular case, however, may give rise to substantial authority for the tax treatment of an item. Notwithstanding the preceding list of authorities, an authority does not continue to be an authority to the extent it is overruled or modified, implicitly or explicitly, by a body with the power to overrule or modify the earlier authority. In the case of court decisions, for example, a district court opinion on an issue is not an authority if overruled or reversed by the United States Court of Appeals for such district. However, a Tax Court opinion is not considered to be overruled or

modified by a court of appeals to which a taxpayer does not have a right of appeal, unless the Tax Court adopts the holding of the court of appeals.  Similarly, a private letter ruling is not authority if revoked or if inconsistent with a subsequent proposed regulation, revenue ruling or other administrative pronouncement published in the Internal Revenue Bulletin."

"(iv) * * * * *

"(C) There is substantial authority for the tax treatment of an item if there is substantial authority at the time the return containing the item is filed or there was substantial authority on the last day of the taxable year to which the return relates."

Treasury Regulation § 1.6662-4(d)(i)-(iv) (as in effect in 2015; last amended in 2003) (headings omitted).

The court notes that Congress's Joint Committee on Taxation has reported a "general consensus of scholars and practitioners" that the substantial authority standard requires an approximately 40-percent likelihood of success and that the reasonable basis standard requires an approximately 20-percent likelihood of success.  Joint Committee on Taxation, *Study of Present-Law Penalty and Interest Provisions as Required by Section 3801 of the Internal Revenue Service Restructuring and Reform Act of 1998 (Including Provisions Relating to Corporate Tax Shelters)* at 160 (Table 7) (July 22, 1999).

## IV.    ANALYSIS

Taxpayer asserts that there was substantial authority for his treatment of otherwise allowable marijuana business expense deductions as not disallowed  by Section 280E.[5]  The

---

[5]  Section 280E provides:

"No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted."

court categorizes Taxpayer's positions, and the Department's responses, as follows: (1) arguments about the applicability of laws passed by the Oregon legislature to the 2015 tax year, including arguments based on the Full Text Provision of the Oregon Constitution; (2) arguments based on the Oregon Uniformity Clauses and the Oregon Excessive Fines Clause; (3) arguments that Section 280E was invalid under the Sixteenth Amendment of the United States Constitution (relating to Congress's power to impose an income tax without apportionment among the states); and (4) arguments based on the Excessive Fines Clause of the Eighth Amendment of the United States Constitution.

A.      *Taxpayer's Constitutional Positions*

The court begins its analysis with categories (2) through (4).[6]

*Category (1): Oregon "Full Text" Provision.* Taxpayer's 2015 Oregon return, filed on April 12, 2016, treated his business expenses as deductible notwithstanding Oregon's incorporation of Section 280E through ORS 316.680. In these cross-motions, Taxpayer asserts that the magistrate's decision that Oregon legislation disconnecting from Section 280E violated the "Full Text" Provision of the Oregon Constitution constitutes substantial authority for his reporting position. (*See* Def's Motion for Part Summ J at 10.) The court rejects this argument because the magistrate's decision, like the dissenting opinions in *Northern Cal. Small Bus. Assistants Inc. v. Comm'r*, 153 TC 65 (2019) (*Northern California*), had not been issued when Taxpayer filed his return or at the end of 2015. *See* Treas Reg § 1.6662-4(d)(3)(iv) (authority

---

[6] The court's decision on the merits follows Oregon's "first-things-first" doctrine. *State v. Kennedy*, 295 Or 260, 266-67, 666 P2d 1316 (1983). *See also Hughes v. State of Oregon*, 314 Or 1, 12, 838 P2d 1018 (1992). On the issue of substantial authority, however, the court begins with Taxpayer's positions under state and federal constitutional law because they can be addressed relatively easily.

must have existed when return was filed, or on last day of tax year to which return relates). Taxpayer seems to argue in the alternative that the authorities underlying the magistrate's reasoning constitute substantial authority. (*See* Def's Mot Part Summ J at 10.) The court rejects this argument as well, because the court has found no authorities supporting Taxpayer's understanding of the "Full Text" Provision, while longstanding cases support the Department's understanding. *See Wakefield*, 25 OTR 1, 25 (2022).

*Category (2): Oregon Uniformity and Excessive Fines Clauses.* As to category (2), the court readily agrees with the Department that no substantial authority existed for Taxpayer's position. Under paragraph (3)(i) of the federal regulation, the basic requirement is that "the weight of the authorities supporting the treatment [be] substantial in relation to the weight of authorities supporting contrary treatment." Treas Reg § 1.6662-4(d)(3)(i). With respect to the Uniformity Clauses, the Department correctly points out that all the cases Taxpayer cited were factually distinguishable, and Taxpayer cited them mainly to establish the test. (*See* Ptf's Cross-Mot Summ J & Resp at 14-15.) That test is highly deferential to the legislature, requiring only "genuine differences" between classes and a conceivable rational basis for the classification. *See Wakefield*, 25 OTR at 27 (2022). Taxpayer offered no authority for the proposition that marijuana is in the same class as, yet treated differently from, other substances, and Taxpayer did not refute the rational basis proffered by the Department. *See id.* at 28. As to Taxpayer's Oregon Excessive Fines Clause argument, Taxpayer failed to cite, much less refute with substantial authority, dispositive precedent holding that the Clause could not apply in Taxpayer's civil case. *See id.* at 29.

*Category (3): Federal Sixteenth Amendment.* In rejecting Taxpayer's argument under the Sixteenth Amendment, the court relied on the doctrine that deductions are a matter of "legislative grace." *Id*. at 43. That doctrine is rooted in a 1934 statement of the United States Supreme Court that, although *dicta*, has come to support numerous later Supreme Court decisions upholding the denial of deductions. *See New Colonial Ice Co. v. Helvering*, 292 US 435, 440, 54 S Ct 788, 78 L Ed 1348 (1934) ("The power to tax income like that of the new corporation is plain and extends to the gross income. Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed."). This court noted that scholars have made, and continue to make, "serious arguments" that the Sixteenth Amendment does not permit an unapportioned tax based on gross income, but "legal periodicals" alone are not within the definition of "authority" in Treas Reg § 1.6662-4(d)(3)(iii), and no court has held in favor of a taxpayer based on such an argument. Taxpayer cited the dissenting opinions in *Northern California*, but those cannot constitute substantial authority, if only because the decision was rendered in 2019, more than three years after Taxpayer filed his return for 2015. *See* Treasury Regulation § 1.6662-4(d)(3)(iv).[7] The court now concludes that Taxpayer's arguments under the Sixteenth Amendment lacked substantial authority.

*Category (4): Federal Excessive Fines Clause.* To evaluate the question of a "fine," for Eighth Amendment purposes, this court analyzed pre-2016 cases, identifying three factors that tended to indicate that Section 280E could constitute a "fine" and four factors that weighed against treating Section 280E as a fine. *Wakefield*, 25 OTR at 48. The court found, however,

---

[7] The court in this case does not decide whether a dissenting opinion (or, for that matter, a concurrence or a plurality opinion) could constitute a "court case[ ]" that is "authority" under Treas Reg § 1.6662-4(d)(3)(iii).

that a long history of "public policy" limitations on deductions in federal income tax law was an "important overlay" that "weighs substantially" against treating Section 280E as a fine. *Id*. at 50. Here too, Taxpayer cited the dissenting opinions in *Northern California*, but apart from the fact that those opinions did not exist when Taxpayer filed his return, the opinions also could not suffice as "authority" on the entire Excessive Fines Clause issue because a lack of evidence in the record prevented the dissenters from analyzing whether the denial of deductions under Section 280E created a fine that was "excessive." *See Northern Cal.*, 153 TC at 90, 93; *see US v. Bajakajian*, 524 US 321, 329, 118 S Ct 2028, 141 L Ed 2d 314 (1998) (Eighth Amendment applies if payment is a "fine" *and* is "excessive"). Thus, while contemporaneous authorities provided some support for Taxpayer's position, the court concludes that the "substantial" weight of the authorities favored the government.

B.      *Taxpayer's Oregon Statutory Positions (Category 1)*

The court considers whether Taxpayer "may have substantial authority for a position that is supported only by a well-reasoned construction of the applicable statutory provision." Treas Reg § 1.6662-4(d)(3)(ii). The court has found no precedential Oregon cases considering this provision of the regulation. *Cf. Santa Fe Natural Tobacco Co. v. Dept. of Rev.*, 25 OTR 124, 164 (2022) (in "matters of first impression," holding taxpayer's construction of federal statute satisfied "reasonable basis" test under Treas Reg § 1.6662-4(d); not reaching issue of substantial authority). Because the Department's administrative rule adopts the definition of substantial authority by reference, the court looks to federal cases for any persuasive value inherent in their reasoning. In "novel" circumstances, federal courts have found the substantial understatement penalty inapplicable, applying the "well-reasoned construction" clause. *See Booth v.*

*Commissioner*, 108 TC 524, 578 (1997); *Dunnegan v. Commissioner*, 82 F3d 404 (unpublished;

*reprinted in* 77 AFTR 2d 1000-1999 (3d Cir 1996)).

      1.    *Booth v. Commissioner*

In *Booth*, the United States Tax Court considered a set of test cases involving an

employee benefit plan that sought to qualify as a "welfare benefit" plan that constituted a "10 or

more employer plan" lacking "experience-rating arrangements with respect to individual

employers," as specified in IRC § 419A(f)(6) (1997). Employer contributions to a plan meeting

all of these requirements could be deductible in the year made, while employees could avoid

reporting the contributions as income until a year later. *See* 108 TC at 562-63. The creators of

the plan developed it in 1988 in response to federal tax legislation adopted in 1984, 1986, and

1987 that limited the tax benefits a small business owner derived from a pension plan. *See id.* at

528. One of the plan's designers sought a ruling from the Internal Revenue Service (the

Service), but the designer withdrew the request when the Service did not act on it within 18

months. *See id.* at 567-68. The Service ultimately published a Notice in 1995 that indicated,

without naming the plan, that the Service disagreed that the plan qualified for the treatment its

developers intended. *See id.* at 562. After extensive discussion, the court held that the plan was

a "welfare benefit" plan that satisfied the first requirement, but the plan did not satisfy the

remaining requirements. *See id.* at 563-64, 570-71. Considering the understatement penalty, the

court stated:

> "We conclude that the corporate petitioners are not liable for the penalties in
> dispute. We have agreed with petitioners that the Prime Plan is not a plan of
> deferred compensation and whether the Prime Plan is within the scope of section
> 419A(f)(6) is a novel question. Although we decide the latter question in favor of
> respondent, we are persuaded that petitioners' position is supported by a well-
> reasoned construction of the relevant statutory provisions. Sec. 1.6662–

4(d)(3)(iii), Income Tax Regs. We decline to uphold respondent's determination of the penalties against the corporate petitioners in the circumstances herein."

*Id.* at 578.  The court did not elaborate on its conclusion, but the court's discussion on the merits shows that the taxpayers put forward a number of legal arguments based on the statutory text and legislative history, as well as a factual argument that persuaded the court as to five features of the plan, while falling short as to nine features.  *See id.* at 571-73.

   2.   *Dunnegan v. Commissioner*

In *Dunnegan*, an individual taxpayer failed to persuade the United States Tax Court, and on appeal, the Third Circuit, that he could include the payment of a mortgage in his cost of purchasing a new home for purposes of the former "rollover" provisions of IRC § 1034 (1988). The taxpayer sold his principal residence, realizing gain, and moved into a property that he and his parents had been holding as a rental, subject to a mortgage that had been in place for several years.  During the following two-year window to effect a tax-free replacement, he engaged in a complex and sparsely documented series of transactions with his parents, ultimately becoming the sole owner of the former rental property, now his new principal residence.  He paid off the mortgage that still burdened the property and took the position on his tax return that that payment was part of his cost of acquiring the property.  He relied on a provision in Treasury Regulation § 1.1034-1(c)(4)(i) (1988) that defined the "cost of purchasing a new residence" to include "any indebtedness to which the property is subject at the time of purchase, whether or not assumed by the taxpayer."  In doing so, he ignored the next subpart in sequence of the regulation, which limited the definition of "cost" to costs made within two years of the acquisition.  On the merits, the court held:  "Because the taxpayer remained jointly and severally liable to the mortgagee at all times since the mortgage's inception, he incurred liability under the * * * mortgage more than

two years before the purchase of [the] property. Thus, it cannot be considered as 'cost' in purchasing the new residence." *Dunnegan*, 77 AFTR 2d 1000-1999 at § II.

With respect to the substantial understatement penalty, the Third Circuit stated:

"In this case, Dunnegan has adequately demonstrated that there is no prior relevant authority contrary to his position. The I.R.S. concedes in its brief to this court that the issue is novel, and they can find no factually similar cases. This means, of course, that Dunnegan can cite no cases in support of his construction of the regulations either. However, the regulations concerning Section 6661 state that a taxpayer may have substantial authority for a position supported only by a well-reasoned construction of the applicable statutory provision. We hold that such support is sufficient when the issue presented is so novel that there are no other authorities pertaining to it.

"The Tax Court noted that Dunnegan had no authority for his position. However, it failed to note that there was no authority against Dunnegan's position. Although we today hold it incorrect, his construction of the regulation was arguably supportable. Under such circumstances, we believe that it is unreasonable for the IRS to impose a 25% penalty on Dunnegan for substantial understatement."

*Dunnegan*, 77 AFTR 2d 1000-1999 at § III.

### 3. Application of *Booth* and *Dunnegan*

In both *Booth* and *Dunnegan*, the courts were willing to consider the "novelty" of the issue when deciding whether the position was "supported only by a well-reasoned construction" of the relevant statute or regulation. This court finds persuasive the United States Tax Court's reasoning in *Booth*, where the court found the taxpayers' position novel because the relevant statute had been enacted only recently before the benefit plan was established, and guidance was not yet available from the taxing authority, or from decided cases. In that case, the court also found several cogent, but unpersuasive, legal and factual arguments supporting the taxpayers' position.

By contrast, this court does not find the Third Circuit's reasoning in *Dunnegan* persuasive. There is no indication that the regulation on which the taxpayer relied was new, and the plain language of the next subpart of the same regulation substantially undercut the taxpayer's position. The issue appears to have been novel only because the facts of the taxpayer's own complex transactions with his parents were unusual (or possibly because no litigant prior to the taxpayer in the case had ventured to advance the legal argument on which he relied).

In this case, the court finds that the state of the law at the relevant time was analogous to, but more extreme than, that in *Booth*. In mid-April 2016, when Taxpayer filed his 2015 Oregon return, only about two weeks had elapsed since the legislature passed the fifth relevant change in a little over a year. *See Wakefield*, 25 OTR at 18 (discussing passage of SB 1601 (2016) on March 29, 2016). The passage of Measure 91 by the people in November 2014 had clearly disconnected from Section 280E for at least a portion of 2015, and the first bill passed by the legislature in the 2015 session reinforced, and even extended that disconnection to all of 2015. *See id.* at 8 (discussing passage of HB 3400 (2015)). When the legislature later eliminated Measure 91's disconnection language for personal income taxpayers for 2015, it did so by *replacing* the text, in contrast to the technique of an express *repeal*, which the legislature used for corporate taxpayers. *See id.* at 10-11 (discussing replacement text in HB 2041 (2015)); *id.* at 14 (discussing use of "repeal" for corporate provisions in HB 3400 (2015)). This legislative technique doubtless was appropriate to the situation, but it also had the effect of providing less obvious notice to personal income taxpayers than an express repeal. The court itself, in its decision on the merits, required some 15 pages to explicate the consequences of the various bills

before concluding that the Department had correctly argued that the legislature had disconnected from Section 280E for all of 2015. *See id.* at 6-21.

The court in *Booth* relied both on the fact that the applicable law was new, untested, and uninterpreted by administrative guidance, and on the strength of the taxpayers' substantive position based on the law's text and legislative history. Considering those two factors in this case, the court finds that the relevant Oregon law was equally untested but also much newer in relation to Taxpayer's filing date. Neither party has made the court aware of any administrative interpretations on the deductibility under Oregon law of marijuana-related business expenses for 2015. Taxpayer's interpretation of the relevant laws is incorrect, but the formulation of the text of the laws, and the number of them in rapid succession, present a significant challenge to understanding. By comparison, the provision at issue in *Booth* clearly put taxpayers on notice that Congress had created a statutory exception for a particular type of benefit plan, even if the precise application of the test required resort to legislative history. See IRC § 419A(f)(6)(A) (1997) ("This subpart shall not apply in the case of any welfare benefit fund which is part of a 10 or more employer plan."). And in *Booth*, Congress published a report written by the staff of the House Ways and Means Committee, as well as a highly detailed conference committee report, both of which provided examples and rationales on which the court was able to rely. *See Booth*, 108 TC at 565-66 (citing H Conf Rept 98-861 (1984); H Rep 98-432 (Part 2) (1984).). By contrast, the legislative history of the Oregon bills provided mainly information about the many urgent regulatory issues involving the legalization of marijuana, with few references to connection with Section 280E. *See, e.g.*, Testimony of Mark Mayer, Work Session, Joint Committee on Marijuana Legalization, HB 4014 (Feb 9, 2016) at 11:35 to 13:00 (discussing tax

provisions and noting that legislation adds medical marijuana businesses so that they can claim tax deductions on state tax forms (for 2016 and later)); Staff Measure Summary, HB 4014A ("Allows all marijuana establishments to deduct business expenses * * * when filing a state tax return."); Preliminary Staff Measure Summary, SB 1601 (Feb 22, 2016) ("The measure would also now allow medical marijuana businesses along with recreational licensees to claim business deductions on their state tax forms."). In these highly unusual circumstances, given the novelty of the issue, this court concludes that Taxpayer's position that his business expense deductions for 2015 were not limited by Section 280E was supported "by a well-reasoned construction of the applicable statutory provision."

The court emphasizes the unusual and transitory nature of the facts in this case. The issue here is not "novel" simply because it is one of first impression. *Cf. Curcio v. C.I.R.*, 99 TCM (CCH) 1478 (2010) ("Even if these cases were without direct precedent, the issue of whether an expenditure by a close corporation is ordinary and necessary under section 162 or a constructive distribution is not novel."). Nor is the fact that Taxpayer filed his return shortly after the relevant law had been passed solely significant. *Cf. White v. C.I.R.*, 103 TCM (CCH) 1560, *24 (2012) ("In *Booth* the Court did not impose an accuracy-related penalty because the question of whether the Prime Plan was within the scope of section 419A(f)(6) was at the time a novel question. In Notice 95–34 the IRS provided guidance on the tax problems raised by certain trust arrangements in seeking to qualify for exemption from section 419. Furthermore, before any of the years at issue, this Court issued *Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 2000 WL 1048512. We therefore conclude that there was not substantial authority supporting the [taxpayer's position]."). The court relies primarily on the number of changes (six,

counting Measure 91 itself) actually passed into law, over less than 18 months, that altered the result for this taxpayer twice.[8] This happened because the legislature was in the difficult and extraordinary circumstance of having to react quickly to a regulatory sea change enacted by citizens' initiative. The legislature ultimately resolved the issue squarely against the position taken by Taxpayer, but when Taxpayer timely filed his return, the copious "dust" was not long settled.

## V. CONCLUSION

For the foregoing reasons, the court concludes that Taxpayer had substantial authority for the position that his business expense deductions for tax year 2015 were not limited by application of Section 280E. The Penalty under ORS 314.402 does not apply. Now, therefore,

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment is granted.

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Partial Summary Judgment is denied.

Dated this 22nd day of September, 2023.

9/22/2023 8:57:52 AM

Judge Robert T. Manicke

---

[8] The court counts a total of 27 bills introduced in the 2015 and 2016 sessions in response to some aspect of Measure 91; eight of them passed. *See Wakefield*, 25 OTR at 7-8.